**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| EXWORKS CAPITAL, LLC,[1] | Case No.: 22-10213-BLS |
| Debtor. | |

## COMBINED DISCLOSURE STATEMENT AND SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF EXWORKS CAPITAL, LLC

**BAKER & HOSTETLER LLP**
Michael A. VanNiel (Admitted *pro hac vice*)
Alexis C. Beachdell (Admitted *pro hac vice*)
Joseph M. Esmont (Admitted *pro hac vice*)
Scott E. Prince (Admitted *pro hac vice*)
127 Public Square, Suite 2000
Cleveland, Ohio 44114

- and -

Jeffrey J. Lyons (No. 6437)
1201 N. Market Street, Suite 1402
Wilmington, Delaware 19801

Counsel for the Debtor and Debtor-in-Possession

Dated:  October 30, 2022
          Wilmington, Delaware

---

[1] The last four digits of the Debtor's federal taxpayer identification number are (9876). The current notice address for the Debtor is ExWorks Capital, LLC, 1415 West 22nd Street, Tower Floor, Oak Brook, IL 60523.

# TABLE OF CONTENTS

## Contents

I.    EXECUTIVE SUMMARY ........................................................................................3

    A.    Introduction.................................................................................................3

    B.    Plan Overview.............................................................................................4

    C.    Questions and Answers about this Combined Plan and Disclosure Statement .......4

        1.    What is chapter 11?..........................................................................4

        2.    Am I entitled to vote on the Plan? ....................................................5

        3.    When is the deadline to vote on the Plan? ..................................................5

        4.    How do I vote for or against the Plan? .......................................................5

        5.    Does the Debtor recommend voting in favor of the Plan?..........................6

        6.    Why is the Bankruptcy Court holding a Confirmation Hearing? ...............6

        7.    When is the Confirmation Hearing set to occur?........................................6

        8.    What is the purpose of the Confirmation Hearing? ....................................6

        9.    Is the Debtor's business still operating? ....................................................6

        10.    What will I receive from the Debtor if the Plan is consummated?..............6

        11.    Is there a preferable alternative to my treatment under the Plan?..............11

        12.    Are any regulatory approvals required to consummate the Plan? .............11

        13.    What happens to my recovery if the Plan is not confirmed or does not go effective?................................................................................................11

        14.    What is meant by "Confirmation," "Effective Date," and "Consummation?"..........................................................................................12

        15.    Is there potential litigation related to the Plan? ........................................12

        16.    How will the preservation of the Causes of Action impact my recovery under the Plan?..........................................................................................12

|  |  | 17. | Who do I contact if I have additional questions with respect to the Plan?........................................................................................12 |
| II. | DEFINITIONS AND CONSTRUCTION OF TERMS....................................................13 |
|  | A. | Definitions....................................................................................13 |
|  | B. | Interpretation; Application of Definitions and Rules of Construction...................20 |
| III. | BACKGROUND ......................................................................................21 |
|  | A. | Nature of the Debtor's Business ...................................................21 |
|  | B. | History of Business Operations of the Debtor ....................................21 |
|  | C. | Legal Structure and Ownership ....................................................21 |
|  | D. | Events Leading to the Filing of the Bankruptcy Case ...........................22 |
|  | E. | Debtor's Assets ....................................................................22 |
|  | F. | Debtor's Liabilities ...............................................................23 |
|  | G. | Current and Historical Financial Conditions .....................................24 |
|  | H. | Significant Events During the Bankruptcy Case ..................................24 |
|  |  | 1. | Employment of Professionals ..................................................24 |
|  |  | 2. | Claims Process and Bar Date....................................................24 |
|  |  | 3. | Insurance Issues .................................................................24 |
|  |  | 4. | Member Demand ..............................................................25 |
|  |  | 5. | Subchapter V Eligibility ........................................................26 |
|  |  | 6. | Exclusivity Motion..............................................................26 |
|  |  | 7. | DIP Financing ..................................................................27 |
|  |  | 8. | Development of the Plan........................................................27 |
|  |  | 9. | PPP Loan........................................................................28 |
|  | I. | Projected Recovery of Avoidable Transfers ......................................28 |
| IV. | CONFIRMATION AND VOTING ...............................................................28 |
|  | A. | Plan Confirmation Hearing .......................................................28 |

B.     Requirements for Plan Confirmation ..................................................29

C.     Best Interests of the Creditors Test ..................................................29

D.     Plan Feasibility...............................................................................30

E.     Classification of Claims ..................................................................30

F.     Impaired Claims .............................................................................31

G.     Eligibility to Vote on this Plan........................................................31

H.     Voting Procedures and Deadlines ....................................................31

I.     Acceptance of this Plan...................................................................32

J.     Elimination of Vacant Classes ........................................................33

V.     TREATMENT OF UNCLASSIFIED CLAIMS ...........................................33

A.     Administrative Expense Claims.......................................................33

B.     Professional Fee Claims .................................................................34

C.     Priority Tax Claims ........................................................................34

VI.     CLASSIFICATION OF CLAIMS AND INTERESTS;
ESTIMATED RECOVERIES ..................................................................34

VII.     TREATMENT OF CLAIMS AND INTERESTS ..........................................35

A.     Classification and Treatment of Claims and Interests .........................35

     1.     Class 1 – Priority Non-Tax Claims...........................................35

     2.     Class 2 – Employee Severance Claims......................................35

     3.     Class 3 – Litigation Defendant Claims .....................................36

     4.     Class 4 – King & Spalding Claims ...........................................37

     5.     Class 5 – General Unsecured Claims.........................................39

     6.     Class 6 – Intercompany Receiver Claims ..................................39

     7.     Class 7 – SEC Claims ............................................................40

     8.     Class 8 – Miscellaneous Indemnity Claims ...............................40

     9.     Class 9 – Equity Interests.......................................................41

VIII.  THE LIQUIDATION OF THE DEBTOR ........................................................41

   A.   Formation of the Liquidating Trust .................................................41

IX.  PROVISIONS REGARDING THE LIQUIDATING TRUST .........................42

   A.   Vesting of the Debtor's Assets in the Liquidating Trust Free and Clear ..............42

   B.   Material Terms of the Liquidating Trust ..........................................42

   C.   Preservation of Causes of Action ...................................................43

   D.   Effectiveness of Securities, Instruments, and Agreements ..................44

   E.   Term of Injunction or Stays ..........................................................44

   F.   Payments ......................................................................................44

   G.   Post-Confirmation Management ....................................................44

X.  PLAN FINANCING ...........................................................................45

   A.   Contribution of the Debtor's Assets to the Liquidating Trust ..............45

   B.   Plan Loan .....................................................................................45

XI.  CLAIMS OBJECTIONS .......................................................................45

XII.  EXECUTORY CONTRACTS ...............................................................46

   A.   Rejection of Executory Contracts and Unexpired Leases ...................46

   B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases ...........46

XIII.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .........................46

XIV.  EXCULPATION, INJUNCTION AND RELATED PROVISIONS ...............47

   A.   Exculpation ..................................................................................47

   B.   Injunction .....................................................................................48

       1.   Injunction Related to Confirmation ........................................48

       2.   Injunction Against Interference with Plan ................................48

   C.   Debtor Release .............................................................................48

   D.   Preservation of SEC Claims ..........................................................49

XV.    NO DISCHARGE OF DEBTOR ..................................................................................49

XVI.   GENERAL PROVISIONS ......................................................................................49

    A.   Title to Assets ..............................................................................................49

    B.   Binding Effect ..............................................................................................50

    C.   Severability ..................................................................................................50

    D.   Retention of Jurisdiction by the Bankruptcy Court .................................50

    E.   Captions ........................................................................................................50

    F.   Modification of Plan ....................................................................................50

    G.   Final Decree ..................................................................................................50

    H.   Provisions Governing Distributions ...........................................................51

        1.   Delivery of Distributions ...................................................................51

        2.   Unclaimed Distributions ...................................................................51

        3.   Minimum Distributions ......................................................................51

    I.   Revocation or Withdrawal of Plan ..............................................................51

    J.   Governing Law .............................................................................................51

    K.   Exemption from Transfer Taxes .................................................................51

    L.   Successors and Assigns ................................................................................52

    M.   Entire Agreement .........................................................................................52

XVII.  RISKS AND OTHER CONSIDERATIONS ........................................................52

    A.   Alternatives to Confirmation and Consummation of a Plan ....................52

        1.   Alternate Plan ......................................................................................52

        2.   Chapter 7 Liquidation or Dismissal ................................................52

    B.   Tax Consequences of the Plan .....................................................................53

        1.   Certain U.S. Federal Income Tax Consequences to Holders of General
            Unsecured Claims ..............................................................................54

XVIII. RECOMMENDATION AND CONCLUSION .....................................................56

## EXHIBITS

**Exhibit A:**    **Demonstrative Litigation Proceeds Waterfall**

**Exhibit B:**    **Liquidation Analysis**

**Exhibit C:**    **Term Sheet for DIP Loan and Plan Loan**

**Exhibit D:**    **Schedule of Allowed Claims for Voting Purposes**

# DISCLAIMER

This Combined Disclosure Statement and First Amended Chapter 11 Plan of Liquidation of ExWorks Capital, LLC² has been prepared in accordance with Section 1125 of the Bankruptcy Code, Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure and Rule 3017-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or entities trading in or otherwise purchasing, selling, or transferring Claims against the Debtor should evaluate this Combined Plan and Disclosure Statement considering the purpose for which it was prepared.

Pursuant to Local Rule 3017-2, this Combined Plan and Disclosure Statement is being submitted for interim approval only. Contemporaneously with the filing of this Combined Plan and Disclosure Statement, the Debtor is filing a motion to, among other things, schedule a joint hearing to consider final approval of the adequacy of the Disclosure Statement and Confirmation of the Plan.

To ensure compliance with IRS circular 230, Holders of Claims are hereby notified that: (a) any discussion of U.S. federal tax issues contained or referred to in this Combined Plan and Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing by the Debtor of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

There has been no independent audit of the financial information contained in this Combined Plan and Disclosure Statement except as expressly indicated herein. This Combined Plan and Disclosure Statement was compiled from information obtained from numerous sources believed to be accurate to the best of the Plan Proponent's knowledge, information, and belief. This Combined Plan and Disclosure Statement was not filed with the SEC or any state authority and neither the SEC nor any state authority has passed upon the accuracy, adequacy, or merits of this Combined Plan and Disclosure Statement. Neither this Combined Plan and Disclosure Statement nor the solicitation of votes to accept or reject the Plan constitutes an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction in which such offer or solicitation is not authorized.

This Combined Plan and Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

---

² Referred to herein as the "**Combined Plan and Disclosure Statement**" or the "**Plan**."

Any projected recoveries to Creditors set forth in this Combined Plan and Disclosure Statement are based upon the analyses performed by the Debtor and its advisors. Although the Plan Proponent and its advisors have made every effort to verify the accuracy of the information presented herein, the Plan Proponent and its advisors cannot make any representations or warranties regarding the accuracy of the information.

Nothing stated herein shall be deemed or construed as an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party. The statements contained herein are made as of the date hereof, unless another time is specified. The delivery of this Combined Plan and Disclosure Statement shall not be deemed or construed to create any implication that the information contained herein is correct at any time after the date hereof.

It is the Plan Proponent's opinion that the treatment of Creditors under the Plan contemplates a greater recovery than that which is likely to be achieved under other alternatives for the Debtor. Accordingly, the Plan Proponent believes that Confirmation of the Plan is in the best interests of Creditors and recommend that Creditors support and vote to accept the Plan.

# I.    EXECUTIVE SUMMARY[3]

## A.    Introduction

The Debtor was formerly a Registered Investment Adviser with the U.S. Securities and Exchange Commission. The Debtor's primary business was to provide investment advisory and management services to certain indirect subsidiary Funds, which Funds made investments in outside companies through a combination of loans and equity investments. The Debtor managed those Funds in return for a management fee until approximately December 2021, when the Funds (but not the Debtor) were placed into a receivership at the request of the Funds' own separate senior secured lender, CIBC Bank.

The Debtor also now owns 100% of the equity of its operating non-debtor subsidiary, World Trade, which is in the business of, among other things, making and servicing SBA loans. The Debtor believes that its ownership interest in World Trade potentially has meaningful value. However, World Trade has substantial business challenges. Those challenges include limited liquidity, which has caused World Trade to work cooperatively with the SBA to sell or wind down its active lending portfolio.  The receiver for the Funds has also asserted significant claims against World Trade.

The Debtor's most significant assets are (a) the continued pursuit of the Litigation against certain former members of the Debtor's executive management team and entities associated with them (which may include bringing additional claims or involving additional defendants as the circumstances may warrant), (b) the Debtor's interest in World Trade, and (c) the Debtor's Avoidance Actions.

This Plan is a liquidating Plan that contemplates the transfer of substantially all of the Debtor's assets to a Liquidating Trust, which will pursue the Litigation and the Avoidance Actions, take the steps it deems appropriate to maximize the value of its ownership interest in World Trade, and make the payments contemplated herein that are not made by the Debtor before the Effective Date.  The Plan contemplates financing to pay Plan expenses and fund the operation of the Liquidating Trust, among other things, in the form of a Plan Loan as described in Section X of the Plan.

The Plan provides for payment in full (or as otherwise agreed) of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.   Holders of Allowed Employee Severance Claims, Allowed Litigation Defendant Claims, Allowed King & Spalding Claims, Allowed General Unsecured Claims, Allowed Intercompany Receiver Claims, Allowed SEC Claims, Allowed Miscellaneous Indemnity Claims and Equity Interests are Impaired and will be paid (or not paid) as set forth in Section I.C.10 below.

---

[3] Capitalized terms used but not defined in this section shall have the meaning ascribed to them in Section II herein. While this Executive Summary is believed to be accurate, in the event of an inconsistency or conflict between this summary and the more complete terms set forth in other sections of this Combined Plan and Disclosure Statement, those other sections shall control over the Executive Summary.

The Debtor supports this Plan and encourages the Holders of Impaired Claims to vote in favor of this Plan.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in Section XVI.F of this Combined Plan and Disclosure Statement, the Plan Proponent expressly reserves the right to alter, amend, or modify this Combined Plan and Disclosure Statement, including the Plan Supplement, one or more times before substantial consummation thereof.

## B.    <u>Plan Overview</u>

Pursuant to the Plan, a Liquidating Trust will be established for the purposes of monetizing the Liquidating Trust Assets, including the Litigation, the Avoidance Actions, and the Debtor's interest in World Trade, and distributing the proceeds of the Liquidating Trust to Creditors in accordance with the priorities set forth in this Plan and the Bankruptcy Code. The Liquidating Trust will be managed by a Liquidating Trustee in accordance with the Liquidating Trust Agreement.  The primary purpose of the Liquidating Trust and its Liquidating Trustee shall be (i) administering, monetizing and liquidating the Liquidating Trust Assets, (ii) resolving all Disputed Claims and (iii) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement.  The Liquidating Trust Assets will primarily consist of the Debtor's cash on hand on the Effective Date, the Litigation and other Causes of Action against third parties, and the Debtor's interest in World Trade.

## C.    <u>Questions and Answers about this Combined Plan and Disclosure Statement</u>

### 1.    **What is chapter 11?**

Chapter 11 is the principal business reorganization and liquidation chapter of the Bankruptcy Code. In addition to permitting debtor reorganization and liquidation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a chapter 11 plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holders of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

**2. Am I entitled to vote on the Plan?**

Your ability to vote on the Plan depends on what type of Claim you hold. Each category of Holders of Claims or Equity Interests, as set forth in Section VI of the Plan pursuant to Section 1122(a) of the Bankruptcy Code, is referred to as a "Class." Each Class's respective voting status is set forth below.

| Class | Type | Treatment | Entitled to Vote? |
|-------|------|-----------|-------------------|
| 1 | Priority Non-Tax Claims | **Unimpaired**. | No. Deemed to accept. |
| 2 | Employee Severance Claims | **Impaired** | Yes. |
| 3 | Litigation Defendant Claims | **Impaired**. | Yes. |
| 4 | King & Spalding Claims | **Impaired.** | Yes |
| 5 | General Unsecured Claims | **Impaired.** | Yes. |
| 6 | Intercompany Receiver Claims | **Impaired.** | Yes. |
| 7 | SEC Claims | **Impaired.** | Yes. |
| 8 | Miscellaneous Indemnity Claims | **Impaired**. | Yes. |
| 9 | Equity Interests | **Impaired.** | No. Deemed to reject. |

Holders of Claims in Class 1 are unimpaired under the Plan and are thus deemed to accept the Plan. Holders of Claims in Class 9 will receive no distribution on account of such Claims under the Plan and are thus deemed to reject the Plan. Holders of Claims in Classes 2, 3, 4, 5, 6, 7 and 8 are impaired under the Plan and are the Holders of the only Claims entitled to vote to accept or reject the Plan. A Claim is "impaired" under the Bankruptcy Code if the Plan alters the legal, equitable or contractual rights associated with such Claim in any way.

**3. When is the deadline to vote on the Plan?**

The Voting Deadline is December 5, 2022 at 5:00 p.m. (prevailing Eastern Time).

**4. How do I vote for or against the Plan?**

Detailed instructions regarding how to vote on the Plan are contained on the Ballots distributed to Holders of Claims that are entitled to vote on the Plan. For your vote to be counted, your Ballot must be properly completed, executed, and delivered as directed, so that your Ballot including your vote is **actually received** by the Debtor **on or before the Voting Deadline,** *i.e.*, **December 5, 2022 at 5:00 p.m. (prevailing Eastern Time).**

5

**5.      Does the Debtor recommend voting in favor of the Plan?**

Yes. The Plan is supported by the Debtor.

**6.      Why is the Bankruptcy Court holding a Confirmation Hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on Confirmation of the Plan and recognizes that any party in interest may object to Confirmation of the Plan.

**7.      When is the Confirmation Hearing set to occur?**

The Bankruptcy Court has scheduled the Confirmation Hearing for **December 15, 2022, at 10:00 a.m. (prevailing Eastern Time)**. The Confirmation Hearing may be adjourned from time to time without further notice. Objections to Confirmation must be filed and served on the Debtor by no later than **December 5, 2022, at 4:00 p.m. (prevailing Eastern Time)** in accordance with the notice of the Confirmation Hearing that accompanies this Plan.

**8.      What is the purpose of the Confirmation Hearing?**

The confirmation of a plan by a bankruptcy court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.

**9.      Is the Debtor's business still operating?**

No. The Debtor's business is no longer operating. The goal of the Plan is to maximize the value of the Debtor's remaining assets and distribute it to creditors under the priorities set forth in the Bankruptcy Code.

**10.      What will I receive from the Debtor if the Plan is consummated?**

The chart below, together with the demonstrative Litigation proceeds waterfall attached hereto as **<u>Exhibit A</u>**, provides information about potential recoveries that Holders of Claims may receive from Litigation proceeds under the Plan.  The demonstrative Litigation proceeds waterfall attached as **<u>Exhibit A</u>** is for illustrative purposes only and is not controlling.  All Litigation proceeds shall be distributed in accordance with the terms of this Plan and the Liquidating Trust Agreement.  Any recoveries from the Avoidance Actions, which the Debtor believes have a value of approximately $3 million, or the Debtor's equity interest in World Trade would be in addition to the Litigation proceeds recoveries illustrated in **<u>Exhibit A</u>**.

Any estimates of Claims in this Plan may vary from the final amounts allowed by the Bankruptcy Court.  As described in Section XI of the Plan, to minimize unnecessary litigation expense for both the Debtor and its Creditors, the Debtor and the Liquidating Trustee intend to defer evaluating Claims or making any objection to the amount, priority or validity of any Claim (including whether a Claim or Equity Interest should be subordinated) until it appears there are

sufficient funds to make a Distribution. Accordingly, the "Estimated Amount of Claims" for Classes that may receive a Distribution under the Plan is the sum of the filed or, if not filed, then scheduled, amount of the Claims in such Class, without accounting for any objection the Debtor may have to any Claims in such Class.

Your ability to receive Distributions under the Plan depends on the Debtor's ability to obtain Confirmation and meet the conditions necessary to consummate the Plan. As described in Section III.E of the Plan, payment on Allowed Claims is largely dependent on proceeds from the Litigation, proceeds from the Avoidance Actions, and the value of the Debtor's interest in World Trade, all of which have an unknown and unprojectable value at this time. Accordingly, the "Recovery Estimate" for most Classes that may receive a Distribution under the Plan is designated "Unknown."

THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.

Except to the extent that a Holder of an Allowed Claim has agreed to less favorable treatment of such Allowed Claim, each Holder of an Allowed Claim shall receive under the Plan the treatment described below for such Holder's Allowed Claim. Unless otherwise indicated, the Holder of an Allowed Claim shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | $95,500 | 100% | **Unimpaired**. Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each Holder of such a Claim shall receive (i) payment in full in Cash on the Effective Date, or (ii) such other treatment as to which the Holder of an Allowed Priority Non-Tax Claim agrees. |
| 2 | Employee Severance Claims | $318,611 | 100% | **Impaired**. To the extent such Claim has not been paid in full as a Class 1 Priority Non-Tax Claim, each Holder of an Allowed Employee Severance Claim shall receive (i) on the Effective Date, a payment equal to 80% of the Allowed Employee Severance Claim, and (ii) on the date that is the earlier of (a) thirty (30) days after the Litigation Recovery Date or (b) one hundred eighty (180) days after the Effective Date, a payment |

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
| | | | | equal to 20% of the Allowed Employee Severance Claim. |
| 3 | Litigation Defendant Claims | $5,964,621.71 | Unknown See Exhibit A | **Impaired**. Each Holder of an Allowed Litigation Defendant Claim shall be entitled to (i) seek payment of such Allowed Litigation Defendant Claim from the Insurance Policies, to the extent available; (ii) have such Allowed Litigation Defendant Claim determined as to liability and amount owed as part of the Litigation or Defamation Litigation, as applicable; (iii) upon the conclusion of the Litigation or Defamation Litigation, as applicable, to retain whatever set off rights such Holder would have had against the Debtor or the Liquidating Trust given the final outcome of the Litigation or Defamation Litigation, as applicable; provided, however, that the enforceability of such set off rights shall be determined in the Bankruptcy Court; and (iv) to the extent (a) the Holder is determined to have an Allowed Litigation Defendant Claim against the Debtor and (b) is not found liable to the Debtor or the Liquidating Trust in the Litigation in any amount, to be treated as a Class 5 General Unsecured Creditor with respect to such Allowed Litigation Defendant Claim amount that is not paid from the Insurance Policies. |
| 4 | King & Spalding Claims | $4,124,556.21 | Unknown See Exhibit A | **Impaired.** Each Holder of an Allowed King & Spalding Claim shall be entitled to (i) with respect to portions of such Allowed King & Spalding Claim that are not related to the Litigation (including portions of such Allowed Claim related to the SEC Investigation and Defamation |

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
| | | | | Litigation), (x) seek payment of such Allowed King & Spalding Claim from the Insurance Policies and apply any such proceeds King & Spalding has already received (whether received pre-petition or post-petition) and is holding in escrow, and (y) solely to the extent not paid from the Insurance Policies, be treated as a Class 5 General Unsecured Creditor with respect to such amounts, and (ii) with respect to portions of such Allowed King & Spalding Claim that are related to the Litigation, on the Effective Date, receive a payment in the amount of $500,000, and receive such other treatment as more fully described in Section VII.A.4. For the avoidance of doubt, with respect to fees and expenses owed to King & Spalding for services provided before the Petition Date, King & Spalding shall be permitted to retain and apply payments received under the Debtors' Insurance Policies for any such prepetition fees and expenses (including any proceeds King & Spalding has already received and is holding in escrow) whether received before or after the Petition Date. Further, nothing herein shall otherwise impair or limit in any way any insurer's liability under the Debtors' Insurance Policies or King & Spalding's entitlement to be reimbursed and continue to be reimbursed for fees and expenses covered under the Insurance Policies, whether arising before or after the Petition Date. |
| 5 | General Unsecured Claims | $1,842,977.19 | Unknown See Exhibit A | **Impaired.** Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from the Debtor's |

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
|  |  |  |  | Liquidating Trust Assets. |
| 6 | Intercompany Receiver Claims | $14,052614.84 | Unknown See Exhibit A | **Impaired.** Each Holder of an Allowed Intercompany Receiver Claim shall be treated as a Class 5 General Unsecured Creditor with respect to such Allowed Intercompany Receiver Claim; <u>provided, however,</u> that the amount of any Allowed Intercompany Receiver Claim shall be reduced by the amount of any World Trade Payments made to the Holder of such Allowed Intercompany Receiver Claim, thus reducing the Distribution to the Holder of an Allowed Intercompany Receiver Claim. |
| 7 | SEC Claims | Unliquidated | Unknown See Exhibit A | **Impaired.** Each Holder of an Allowed SEC Claim shall be treated as a Class 5 General Unsecured Creditor with respect to such Allowed SEC Claim; <u>provided, however,</u> that the amount of any Allowed SEC Claim shall be reduced by the amount of any payments made to the Holder of such Allowed SEC Claim from the Debtor's Insurance Policies, thus reducing the Distribution to the Holder of an Allowed SEC Claim. |
| 8 | Miscellaneous Indemnity Claims | Unliquidated | Unknown See Exhibit A | **Impaired**. Each Holder of an Allowed Miscellaneous Indemnity Claim shall be entitled to pursue payment of such Claim from the Insurance Policies. Holders of Allowed Miscellaneous Indemnity Claims shall not be entitled to receive a Pro Rata Share of Available Trust Cash derived from the Debtor's Liquidating Trust Assets and shall not otherwise participate in any Distributions on account of such Claims. |

| Class | Type | Estimated Amount of Claims | Recovery Estimate | Treatment |
|---|---|---|---|---|
| | | | | |
| 9 | Equity Interests | 35,887 membership units | 0% | **Impaired.** On the Effective Date, all Equity Interests in the Debtor shall be cancelled. Notwithstanding the forgoing cancellation, to the extent there are Litigation Trust Assets remaining after all Allowed Claims in Classes 1 – 8 are paid in full, the Liquidating Trustee shall distribute those Liquidating Trust Assets to Holders of cancelled Equity Interests *pro rata*, subject to further order of the Bankruptcy Court. |

**11. Is there a preferable alternative to my treatment under the Plan?**

The Debtor has received offers of settlement from the Defendants in connection with the Litigation. The Debtor has rejected these past offers because it believed those offers were too low and not supported by the evidence in the Litigation, but settlement discussions are ongoing. At this time, the Debtor does not believe there is an alternative, including the settlement proposals the Debtor has received from the Defendants, that would result in greater recoveries to Holders of Claims than those described herein. The Debtor continues to believe that the Plan represents the most feasible, highest and otherwise best value-maximizing alternative. For these reasons, the Debtor recommends that you vote to accept the Plan.

**12. Are any regulatory approvals required to consummate the Plan?**

There are no known federal or state regulatory approvals that are required to consummate the Plan at this time. However, to the extent any such regulatory approvals or other authorizations, consents, rulings, or documents are necessary to implement and effectuate the Plan, it is a condition precedent to the Effective Date that they be obtained.

**13. What happens to my recovery if the Plan is not confirmed or does not go effective?**

In the event that the Plan is not confirmed or does not go effective, an alternative plan may be proposed to the Holders of Claims, or this case may be dismissed or converted to chapter 7. Based upon the analyses conducted by the Debtor at this time, the Debtor has concluded that this Plan provides the best opportunity for Holders of Claims to maximize the amounts they

receive. For a more detailed description of the consequences of an extended chapter 11 case, or of a chapter 7 liquidation scenario, *see* Section IV entitled "Confirmation and Voting" and the Liquidation Analysis attached hereto as **Exhibit B**.

### 14. What is meant by "Confirmation," "Effective Date," and "Consummation?"

"Confirmation" of the Plan refers to approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution indicated under the Plan. After Confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can go effective. Initial distributions to Holders of Allowed Claims will only be made on the date the Plan becomes effective—the "Effective Date"— or as soon as reasonably practicable thereafter, as specified in the Plan. *See* Section XIII entitled "Conditions Precedent to the Effective Date" for a discussion of the matters that must be resolved prior to the Plan becoming effective.

### 15. Is there potential litigation related to the Plan?

Parties in interest may object to the approval of this Disclosure Statement and may object to Confirmation of the Plan as well. Those objections potentially could give rise to litigation. In the event that it becomes necessary to confirm the Plan over the rejection of certain Classes, the Debtors may seek Confirmation of the Plan notwithstanding the dissent of such rejecting Classes. The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a Plan that has been rejected by an impaired Class if it determines that the Plan satisfies Section 1129(b) of the Bankruptcy Code.

### 16. How will the preservation of the Causes of Action impact my recovery under the Plan?

The Plan provides that the Liquidating Trust will be vested with all Causes of Action held by the Debtor on the Petition Date. The Liquidating Trust may pursue such Causes of Action, as appropriate, in accordance with the Liquidating Trustee's judgment. **No entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against it as any indication that the Liquidating Trust will not pursue any and all available Causes of Action against it. Except as specifically released under the Plan or pursuant to a Final Order, the Debtor and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any entity.** Unless any Causes of Action of the Debtor against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order, the Liquidating Trust expressly reserves all such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

### 17. Who do I contact if I have additional questions with respect to the Plan?

If you have questions regarding this Plan, please contact the Debtor's counsel at:

Alexis C. Beachdell, Esq.

Telephone: (216) 861-7873
Email: abeachdell@bakerlaw.com

## II. DEFINITIONS AND CONSTRUCTION OF TERMS

### A. Definitions

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

1. **Administrative Expense Claim:** Any Claim for the cost or expense of administration of the Chapter 11 Case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's Estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2. **Allowed Claim:** Any Claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

3. **Allowed Employee Severance Claim:** An Employee Severance Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

4. **Allowed General Unsecured Claim:** A General Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

5. **Allowed King & Spalding Claim:** A King & Spalding Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

6. **Allowed Litigation Defendant Claim:** A Litigation Defendant Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

7.     **Allowed Miscellaneous Indemnity Claim:**  A Miscellaneous Indemnity Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

8.     **Allowed Priority Non-Tax Claim:**  A Priority Non-Tax Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.     **Allowed Priority Tax Claim:**  A Priority Tax Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

10.    **Allowed Intercompany Receiver Claim:**  An Intercompany Receiver Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

11.    **Allowed SEC Claim:**  A SEC Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

12.    **Available Trust Cash:**  The proceeds of the Liquidating Trust's assets that are available for distribution to Holders of Beneficial Interests in the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

13.    **Avoidance Action:**  Any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by the Debtor pursuant to chapter five of the Bankruptcy Code or under similar or related state or federal statutes and common law, including without limitation fraudulent transfer and preferential transfer laws.

14.    **Ballot:**  The ballot on which each Holder of a Claim entitled to vote to accept or reject this Plan casts such vote.

15.    **Bankruptcy Code or Code:**  The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

16.    **Bankruptcy Court or Court:**  The United States Bankruptcy Court for the District of Delaware.

17.    **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure.

18.     **Beneficial Interests:**  The uncertificated beneficial interests in the Liquidating Trust evidencing the right of each Holder of such Beneficial Interests to receive Distributions from the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement.

19.     **Beneficiary:**  With respect to the Liquidating Trust, any Holder of an Allowed Claim that may, or that is entitled to, receive a Distribution from the Liquidating Trust under the terms of this Plan.

20.     **Cash:**  Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

21.     **Causes of Action:**  Any actions, claims, cross-claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (i) rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to or otherwise contest Claims or Equity Interests; (iii) claims pursuant to Section 362 or chapter 5 of the Bankruptcy Code; (iv) commercial tort claims; (v) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code; and (vi) Avoidance Actions.  For the avoidance of doubt, Causes of Action includes, but is not limited to, the Litigation and any claims against any existing or yet-to-be-named defendants in the Litigation or individuals and entities associated with, related to, and/or succeeding in interest to the Defendants in the Litigation.

22.     **Chapter 11 Case:**  This case under chapter 11 of the Bankruptcy Code in which ExWorks is the Debtor and Debtor-in-Possession.

23.     **CIBC Bank:**  CIBC Bank USA.

24.     **Claim:**  Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

25.     **Class:**  A category of Holders of Claims or interests which are substantially similar to the other Claims or interests in such class, as may be required by 11 U.S.C. § 1122 or other applicable provisions of the Bankruptcy Code.

26.     **Confirmation:**  The entry by the Bankruptcy Court of an order confirming this Plan.

27.     **Confirmation Date:**  The date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

28.     **Confirmation Order:**  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

29.     **Creditor:**  Any person who has a Claim against the Debtor that arose on or before the Petition Date.

30.     **Debtor and Debtor-in-Possession:**  ExWorks Capital, LLC, the debtor and debtor-in-possession in this Chapter 11 Case.

31.     **Defamation Litigation:** That certain litigation captioned *Abrahams, et al. v. ExWorks Capital, LLC*, Case No. 2020 L 011645, pending before the Circuit Court of Cook County, Illinois.

32.     **Defendants:**  Randolph Abrahams, Andrew Hall, Luke LaHaie, RedRidge Finance Group, LLC, RedRidge Lender Services, LLC, ACAP SME, LLC, ACAP Fund GP, LLC, and any further defendants which may be later added as defendants to the Litigation.

33.     **DIP Loan.**  Proposed debtor-in-possession financing to be provided by Lender, as described in Section III.H.7 and in the Term Sheet.

34.     **Disputed Claim:**  Any Claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed. There shall be no Distribution on account of a Disputed Claim unless and until it becomes an Allowed Claim. To the extent a Disputed Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to the Distributions such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

35.     **Distributions:**  The property required by the Plan to be distributed to the Holders of Allowed Claims.

36.     **Effective Date:**  The date on which the conditions specified in Section XIII of this Plan have been satisfied or waived and the transactions contemplated hereunder have been consummated.

37. **Employee Severance Claim:** A Claim against the Debtor related to amounts owed as severance to the following individuals who were terminated as of December 31, 2021: (i) Doug Sherlag; (ii) Franz Gildemeister; (iii) James Harrington; (iv) Meredith Stopka; (v) Michelle Sadkowy; (vi) Sandra Herrera; and (vii) to the extent owed on an individual basis, Reinaldo Pascual.

38. **Equity Interest:** An ownership interest in the Debtor.

39. **Estate:** The bankruptcy estate of the Debtor in the Bankruptcy Case, as created under Section 541 of the Bankruptcy Code.

40. **Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

41. **ExWorks:** ExWorks Capital, LLC, the Debtor and Debtor-in-Possession in this Chapter 11 Case.

42. **Final Order:** An order or judgment of the Bankruptcy Court or other Court of competent jurisdiction that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

43. **Funds:** Certain pooled investment vehicles to which the Debtor provided investment advisory and management services, including, without limitation, ExWorks Capital Fund I, L.P., ExWorks Capital Fund I-Parallel Vehicle, L.P., ExWorks Capital Fund II-Parallel Vehicle, L.P., ExWorks Capital Fund QP I, L.P. and ExWorks California LLC.

44. **General Bar Date:** May 13, 2022, the deadline for each person or entity, including without limitation, individuals, partnerships, corporations, joint ventures, and trusts, other than Governmental Units, to file a proof of claim against the Debtor for a Claim that arose before the Petition Date.

45. **General Unsecured Claim:** Any Claim against the Debtor that (i) is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Employee Severance Claim, Litigation Defendant Claim, King & Spalding Claim, Intercompany Receiver Claim, SEC Claim, or Miscellaneous Indemnity Claim or (ii) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

46. **General Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 Case which is a General Unsecured Claim.

47. **Governmental Unit:** The meaning set forth in Section 101(27) of the Bankruptcy Code.

48. **Governmental Unit Bar Date:** September 12, 2022, the deadline for Governmental Units to file a proof of claim against the Debtor for a Claim that arose before the Petition Date.

49.     **Holder:**  The legal or beneficial owner of a Claim, and when used on conjunction with a Class or type of Claim, means a Holder of a Claim in such Class or of such type.

50.     **Impaired:**  An Allowed Claim that is Impaired within the meaning of Section 1124 of the Bankruptcy Code.

51.     **Independent Director:**  The Debtor's sole independent director, Mr. Thomas Pratt of Applied Business Strategy.

52.     **Insurance Policies:**  The following insurance policies procured by the Debtor prior to the Petition Date: (i) that certain Asset Management Protector Policy issued by Chubb Group of Insurance Companies for the policy period of May 29, 2020 to May 29, 2021, having a maximum aggregate limit of liability of $5,000,000; (ii) that certain AXIS Excess Insurance Policy issued by AXIS Insurance Company for the policy period of May 29, 2020 to May 29, 2021, having a maximum aggregate limit of liability of $5,000,000, and (iii) that certain Excess Liability Policy issued by Sompo International for the policy period of May 29, 2020 to May 29, 2021, having a maximum aggregate limit of liability of $5,000,000.

53.     **Intercompany Receiver Claim:**  A Claim asserted by the receiver of the Funds for intercompany amounts allegedly owed to the Funds by the Debtor and World Trade, jointly and severally.

54.     **King & Spalding:**  King & Spalding LLP.

55.     **King & Spalding Claim:**  Any Claims asserted by King & Spalding in this Chapter 11 Case that are not Administrative Expense Claims.

56.     **Lender:**  ExWorks Capital Funding, LLC.  Lender is funded by certain Equity Holders of the Debtor and, to the extent applicable, certain investors in the Funds who are not Equity Holders of the Debtor, including Richard E. Perlman, James K. Price, William A. Shutzer, Edward Matthews, Barry M. Salzman, Reinaldo Pacual, and Russell Holcombe.

57.     **Liquidating Trust:**  The ExWorks Capital Liquidating Trust.

58.     **Liquidating Trust Agreement:**  That certain Liquidating Trust Agreement referenced in Sections VIII and IX of the Plan.

59.     **Liquidating Trust Assets:**  All of the assets that vest in the Liquidating Trust pursuant to Sections VIII and IX of the Plan.

60.     **Liquidating Trustee:** Mr. Thomas Pratt of Applied Business Strategy.

61.     **Litigation:**  That certain litigation captioned *ExWorks Capital, LLC and World Trade Finance, LLC v. Randolph Abrahams, et. al.*, Case No. 2020-CH-06538, pending before the Circuit Court of Cook County, Illinois.

62. **Litigation Defendant Claim:** Any Claim of the Defendants, including any Claim for indemnity or advancement related costs and expenses arising from (i) the Amended and Restated Operating Agreement of ExWorks Capital, LLC, dated as of December 31, 2015; (ii) that certain Advancement Agreement between Luke LaHaie, ExWorks, and World Trade, dated as of May 24, 2021; (iii) that certain Advancement Agreement between Andrew Hall, ExWorks, and World Trade, dated as of September 2, 2021, or (iv) any agreement similar to the foregoing.

63. **Litigation Recovery:** The total amount of any judgment, settlement or other recovery in favor of the Debtor and World Trade in the Litigation prior to the deduction of any costs or expenses of the Litigation or apportionment of such recovery between the Debtor and World Trade.

64. **Litigation Recovery Date:** The date on which the Debtor and World Trade receive a Litigation Recovery.

65. **Miscellaneous Indemnity Claim:** Any Claim, other than a Litigation Defendant Claim, for indemnity or advancement related costs and expenses arising from the Amended and Restated Operating Agreement of ExWorks Capital, LLC, dated as of December 31, 2015.

66. **Person:** Has the meaning set forth in section 101(41) of the Bankruptcy Code.

67. **Petition Date:** March 14, 2022, the date the chapter 11 petition for relief was filed.

68. **Plan:** This Combined Disclosure Statement and First Amended Chapter 11 Plan of Liquidation of ExWorks Capital, LLC, either in its present form or as it may be altered, amended, or modified from time to time.

69. **Plan Loan:** Plan financing provided by Lender, as described in Section X and in the Term Sheet.

70. **Plan Proponent:** The Debtor.

71. **Plan Supplement:** The appendix of any schedules or exhibits that may be filed at least seven (7) days prior to the deadline for submission of Ballots to vote to accept or reject a plan. The Plan Supplement will be filed with the Bankruptcy Court and served on the required notice parties.

72. **Priority Non-Tax Claim:** Any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

73. **Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

74.     **Professional Fee Claim:**  Any Claim for professional services rendered to the Debtor or the Estate during the Chapter 11 Case before the Effective Date.

75.     **Pro Rata Share:**  The proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims (including Disputed Claims but excluding Disallowed Claims) in that particular Class.

76.     **SBA:**  The Small Business Administration.

77.     **Schedules:**  Schedules and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court listing liabilities and assets, as amended from time to time.

78.     **SEC:**  The Securities and Exchange Commission.

79.     **SEC Investigation:**  That certain investigation, initiated prepetition, by the SEC, through its Division of Enforcement, captioned *In the Matter of ExWorks Capital, LLC* (C-08726).

80.     **SEC Claim:**  A Claim asserted by the SEC against the Debtor.

81.     **Term Sheet:**  The term sheet attached hereto as **Exhibit C** setting forth the terms of the proposed DIP Loan and the Plan Loan.

82.     **Voting Deadline:**  December 5, 2022 at 5:00 p.m. EST.

83.     **Voting Procedures:** The Plan voting procedures approved by the Bankruptcy Court in its *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Amended Plan Confirmation and Deadlines Related thereto; (III) Temporarily Allowing Certain Claims for Voting Purposes Only; (IV) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related thereto; and (V) Granting Related Relief* [Doc. No. 200], which provides temporary allowance of certain Claims as set forth therein and in the attached **Exhibit D**, unless such Claim is objected to before Confirmation.

84.     **World Trade:**  World Trade Finance, LLC.

85.     **World Trade Payments**: Any payments made to any Creditor by World Trade on account of any obligations owed jointly and severally by the Debtor and World Trade.

## B.     Interpretation; Application of Definitions and Rules of Construction

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in this Combined Plan and Disclosure Statement are to the respective Section in, Article of, Schedule to, or Exhibit to this

Combined Plan and Disclosure Statement. The words "herein," "hereof," "hereto," "hereunder' and other words of similar import refer to this Combined Plan and Disclosure Statement as a whole and not to any particular section, subsection or clause contained in this Combined Plan and Disclosure Statement. The rules of construction contained in Bankruptcy Code Section 102 shall apply to the construction of this Combined Plan and Disclosure Statement. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in this Combined Plan and Disclosure Statement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Combined Plan and Disclosure Statement. Any reference to the "Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires. Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Combined Plan and Disclosure Statement unless otherwise set forth herein or provided by the Bankruptcy Court.

## III.  BACKGROUND

### A.  Nature of the Debtor's Business

The Debtor was formerly a Registered Investment Adviser with the U.S. Securities and Exchange Commission. The Debtor also owns and manages a non-debtor subsidiary, World Trade, which makes and services a portfolio of loans.

### B.  History of Business Operations of the Debtor

The Debtor's primary business was to provide investment advisory and management services to the Funds, which Funds made investments in outside companies through a combination of loans and equity investments. The Debtor managed those Funds in return for a management fee. As recently as 2019, the Debtor managed, on behalf of the Funds, a loan portfolio with a gross loan balance exceeding approximately $422 million, as well as certain equity stakes held by the Funds related to the loan portfolio. The Debtor also owns and manages World Trade.

### C.  Legal Structure and Ownership

The Debtor is a Delaware limited liability company. Thomas Pratt is the independent and sole director of the Debtor. When Mr. Pratt was appointed, he received a retainer paid by PerPrice2, LLC, an entity funded by Richard E. Perlman and James K. Price, two of the Debtor's shareholders. James Harrington is the Debtor's Chief Financial Officer. The Debtor's shareholders include the following people and entities: Randolph Abrahams, Wyatt R. Abrahams Irrevocable Trust, RedRidge Finance Group, LLC, Interlink Trade Finance, Inc., John A. McAdams, CV Starr & Co. Inc., Starr Investment Fund II, LLC, Andrew Hall, T. Matthew Stanley, Brett Crabtree, Luke LaHaie, Robert Richardson, James Harrington, James K. Price, Richard E. Perlman, William A. Shutzer, and Michelle Sadkowy. The Debtor owns 100% of the membership interests of World Trade.

### D.     Events Leading to the Filing of the Bankruptcy Case

In October 2020, the Debtor filed the Litigation against certain members of its former executive management team and entities associated with them, alleging breaches of fiduciary duty, tortious interference with business and business opportunities, fraud, conversion, and related claims. Also in the fall of 2020, the Debtor made a voluntary disclosure to the SEC, whose Division of Enforcement is conducting an investigation of these matters. King & Spalding has been representing the Debtor in connection with the Litigation, the SEC Investigation and related matters.

In the Litigation, the Debtor has asserted that the alleged misconduct of its former executive management team caused significant harm to the Debtor and World Trade. The Debtor asserts that as a result of losses sustained from the alleged misconduct of the Defendants and the Debtor's incurrence and payment of advancement expenses to the Defendants, in late 2021, the Funds (but not the Debtor or World Trade) were placed into a receivership at the request of the Funds' own separate senior secured lender, CIBC Bank. This required the Debtor (but not World Trade) to lay off most of its employees. The Debtor also de-registered as a Registered Investment Adviser.

The Debtor's insurance carrier has declined to fund the costs being incurred by the Debtor and the Defendants in connection with the Litigation. The Defendants have aggressively defended the Litigation and have filed the Defamation Litigation against the Debtor related to the Debtor's allegations in the Litigation. The Defendants have also sought to require the Debtor to advance the Defendants' defense costs related to the Litigation and the SEC Investigation, including filing advancement claims against the Debtor in the proceedings captioned (i) *Randolph Abrahams v. ExWorks Capital, LLC*, Case No. 2020-1077-PAF before the Delaware Chancery Court, (ii) *Andrew Hall v. ExWorks Capital, LLC*, Case No. 2021-1095-JTL before the Delaware Chancery Court, and (iii) *Luke LaHaie v. ExWorks Capital, LLC*, Case No. N21C-12-125 WCC before the New Castle County, Delaware Superior Court.

These and other factors created significant cash flow problems for the Debtor. This bankruptcy was originally filed to allow the Debtor to take advantage of the automatic stay to prevent the accrual and payment of further defense costs to the Defendants, to reorganize so as to be able to pursue the Litigation for the benefit of the Debtor's creditors, to appropriately maximize the value of the Debtor's ownership interest in World Trade, and to assess and determine whether the Debtor could re-commence the provision of investment advisory and management services following an emergence from bankruptcy. As explained below, the Debtor determined during the Chapter 11 Case that reorganization was not feasible and is proceeding with a plan of liquidation.

### E.     Debtor's Assets

The Debtor's primary assets consist of (a) the potential proceeds of the Litigation and Avoidance Actions, (b) its equity interest in World Trade, and (c) the proceeds of the Insurance Policies. Other than an insurance reimbursement payment in the amount of $903,652.21 that the Debtor received for certain indemnification payments made by the Debtor for which the Debtor was entitled to direct reimbursement in accordance with the Insurance Policies, these assets have

an unknown and unprojectable value at this time; <u>however</u>, the Debtor is asserting damages up to at least $100 million in the Litigation and the Debtor believes the Avoidance Actions have a value of approximately $3 million.

The Debtor also owns other assets with a minimal or unknown value. One such asset with minimal or unknown value are the Claims alleged in a Member Demand letter dated July 8, 2022, sent to the Independent Director, by one of the Defendants, alleging misconduct by certain other former directors of the Debtor. As explained below in Section III.H.4, the Independent Director has investigated these allegations with the support of his independent counsel, and at this time does not believe the allegations have merit. Other assets with minimal or unknown value include small amounts of cash in miscellaneous escrow accounts, receivables whose collectability is doubtful and LLC membership interests in certain non-Debtor subsidiaries other than World Trade.

All assets, claims and causes of action of the Debtor shall vest in the Liquidating Trust on the Effective Date so the Liquidating Trustee may prosecute such claims and causes of action for the benefit of the Creditors.

## F. <u>Debtor's Liabilities</u>

The Debtor does not believe that any person holds a secured claim against it. King & Spalding has waived and released its pre-petition attorneys' lien (*see* Order Authorizing the Retention and Employment of King & Spalding LLP, as Special Litigation Counsel, Effective as of March 11, 2022, Doc. No. 88), and now holds an unsecured claim against the Debtor related to unpaid attorneys' fees, to the extent not covered or reimbursed by insurance. King & Spalding has not waived any other rights in connection with the release of its pre-petition attorneys' lien, including any rights to retain and apply payments it received under the Debtors' Insurance Policies for any prepetition fees and expenses (including any proceeds King & Spalding has already received and is holding in escrow) whether received before or after the Petition Date. Certain Defendants in the Litigation have asserted that they are secured on account of set off rights, which the Debtor disputes.

The Debtor estimates its Priority Tax Claims total $37,427.37. The Debtor estimates its Priority Non-Tax Claims, related to unpaid employee severance, total approximately $95,550. The General Bar Date was May 13, 2022, and the Government Bar Date was September 12, 2022. Claims totaling approximately $26 million have been filed against the Debtor, not including claim amounts listed as unliquidated. The largest proof of claim filed against the Debtor is the Intercompany Receiver Claim in the amount of approximately $14 million. The Intercompany Receiver Claim is an intercompany Claim for amounts allegedly due to the Funds from the Debtor and World Trade, jointly and severally, pursuant to an Investment Agreement dated April 30, 2015, between the Debtor, World Trade and one of the Funds. The most significant government claim filed against the Debtor is a proof of claim filed by the SEC asserting unliquidated monetary penalties for potential violations of federal securities laws. The SEC's investigation into the Debtor's alleged misconduct is ongoing. The Debtor has further scheduled approximately $588,000 of obligations for which no proof of claim has been filed.

The Debtor intends to, and reserves the right to, object to any Claims as set forth in Section XI of this Plan.

## G. Current and Historical Financial Conditions

Copies of the Debtor's most recent financial statement was filed with the Court on the Petition Date. The Debtor's approximate gross revenue for calendar year 2021 was $14,152,045, with net income totaling $3,259,806. Except for the recently received payment of $903,652.21 referenced in Section III.E, the Debtor has not generated material revenue in 2022 because the Funds that previously paid management fees to the Debtor were placed in receivership by the Funds' own separate senior secured lender in late 2021, in the pending proceeding captioned *CIBC Bank USA v. ExWorks Capital Fund I, L.P., et. al.*, Case No. 2021 CH 06191 before the Circuit Court of Cook County, Illinois, Chancery Division.

## H. Significant Events During the Bankruptcy Case

### 1. Employment of Professionals

The Debtor requested that the Bankruptcy Court approve its employment of various professionals to assist with this Chapter 11 Case. Specifically, the Debtor requested Bankruptcy Court approval to retain: (i) Baker & Hostetler LLP as its general bankruptcy legal counsel (Doc. No. 55); and (ii) King & Spalding as special litigation counsel (Doc. No. 62). The Bankruptcy Court entered an order granting these requests on June 9, 2022. *See* Doc. Nos. 86 & 88.

### 2. Claims Process and Bar Date

**i. Schedules and Statements.** On March 28, 2022, the Debtor filed its Schedules and SOFA with the Bankruptcy Court. *See* Doc. No. 21. On April 11, 2022 and April 14, 2022, the U.S. Trustee held the meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code. On May 9, 2022, the Debtor filed its Amended Schedules and SOFA. *See* Doc. No. 66. On October 5, 2022, the Debtor filed its Second Amended SOFA. *See* Doc. No. 181.

**ii. Bar Date.** As set forth in the Notice of Commencement, (a) the General Bar Date was May 13, 2022 and (b) the Governmental Unit Bar Date was September 12, 2022.

### 3. Insurance Issues

Since the Petition Date, the Debtor has been working with its insurers to address issues related to the insurers' payment of certain fees and expenses related to the Litigation, the SEC Investigation and the Defamation Litigation that are covered by the Debtor's Insurance Policies. On June 14, 2022, the Debtor filed *Debtor's Motion for Entry of an Order (I) Granting Limited Relief From the Automatic Stay, to the Extent Applicable, to Permit Insurers to Pay or Advance Certain Litigation Costs Under the Debtor's Directors and Officers Liability Insurance Policies (Including Certain Prepetition Litigation Costs), (II) Authorizing King & Spalding to Retain and Apply Certain Escrowed Insurance Proceeds, and (III) Granting Certain Related Relief* (Doc. No. 94) (the "**Insurance Motion**").

On July 15, 2022, the following objections to the Insurance Motion were filed:

i.  *Limited Objection of CIBC Bank USA to Debtor's Motion for Entry of an Order (I) Granting Limited Relief from the Automatic Stay, to the Extent Applicable, to Permit the Insurers to Advance or Pay Certain Litigation Costs under the Debtor's Directors and Officers Liability Insurance Policies, (II) Authorizing King & Spalding and the D&O Defendants to Retain and Apply Certain Escrowed Insurance Proceeds, and (III) Granting Certain Related Relief* (Doc. No. 119);

ii.  *Limited Objection by Luke LaHaie, ACAP SME, LLC and ACAP Fund GP, LLC to Motion for Entry of an Order (I) Granting Limited Relief from the Automatic Stay, to the Extent Applicable, to Permit the Insurers to Advance or Pay Certain Litigation Costs under the Debtor's Directors and Officers Liability Insurance Policies, (II) Authorizing King & Spalding and the D&O Defendants to Retain and Apply Certain Escrowed Insurance Proceeds, and (III) Granting Certain Related Relief* (Doc. No. 120);

iii.  *Joinder of Randolph Abrahams and RedRidge Finance Group, LLC, to Limited Objection of Luke LaHaie, ACAP SME, LLC, and ACAP Fund GP, LLC and Limited Objection of CIBC Bank USA to Motion for Entry of an Order (I) Granting Limited Relief from the Automatic Stay, to the Extent Applicable, to Permit the Insurers to Advance or Pay Certain Litigation Costs under the Debtor's Directors and Officers Liability Insurance Policies, (II) Authorizing King & Spalding and the D&O Defendants to Retain and Apply Certain Escrowed Insurance Proceeds, and (III) Granting Certain Related Relief* (Doc. No. 121).

In response to the above objections, the Debtor filed its *Reply in Support of Debtor's Motion for Entry of an Order (I) Granting Limited Relief from the Automatic Stay, to the Extent Applicable, to Permit Insurers to Advance or Pay Certain Litigation Costs under the Debtor's Directors and Officers Liability Insurance Policies, (II) Authorizing King & Spalding and the D&O Defendants to Retain and Apply Certain Escrowed Insurance Proceeds, and (III) Granting Certain Related Relief* (Doc. No. 123). A hearing was set for the Insurance Motion and related objections and reply for July 27, 2022. However, that hearing was adjourned with the consent of the Debtor and all objecting parties. (Doc. No. 127).

**4.  Member Demand**

On July 8, 2022, one of the Defendants, Mr. Randolph Abrahams, sent the Independent Director a Member Demand letter, alleging misconduct by certain former directors of the Debtor, including Richard E. Perlman, James K. Price, and William A. Shutzer, who are among the individuals who are funding the Lender that is providing the Plan Loan described in this Plan. Upon receipt of the Member Demand letter, the Independent Director immediately commenced an investigation, including identifying, collecting and reviewing the evidence available to him, to assess and review the allegations. That investigation is ongoing and is supported by the Independent Director's independent counsel.

On July 22, 2022, the Independent Director sent Mr. Abrahams a letter requesting evidence to support the allegations and, if necessary, an interview with Mr. Abrahams to gather additional information. Three months later, on October 14, 2022, Mr. Abrahams sent the Independent Director a letter responding to the Independent Director's July 22, 2022 letter and a draft Third-Party Complaint asserting the Member Demand claims against Messrs. Perlman, Price and Shutzer. Mr. Abrahams did not produce or point the Independent Director to any documents supporting the claims asserted in the draft Third-Party Complaint. On October 26, 2022, the Independent Director sent Mr. Abrahams a response to the October 14, 2022 letter requesting again that Mr. Abrahams either produce or point the Independent Director to the documents that support Mr. Abrahams' claims and sit for an interview with the Independent Director. Based on a review of Mr. Abrahams' letters, the draft Third-Party Complaint, and the Independent Director's investigation thus far, at this time the Debtor does not believe the Member Demand allegations have merit.

### 5. Subchapter V Eligibility

On the Petition Date, the Debtor filed a voluntary petition for relief under the Bankruptcy Code and elected to proceed under subchapter V of chapter 11. On May 27, 2022, Randolph Abrahams and RedRidge Finance Group, LLC filed the *Objection to Debtor's Election to be Treated as Subchapter V Debtor Pursuant to 11 U.S.C. § 1182* (Doc. No. 76) (the "**Subchapter V Objection**"). On June 3, 2022, Luke LaHaie, ACAP SME, LLC, and ACAP Fund GP, LLC filed the *Joinder to the Objection to Debtor's Election to be Treated as Subchapter V Debtor Pursuant to 11 U.S.C. § 1182* (Doc. No. 83).

On July 13, 2022, the Debtor filed the *Response to Objection to Debtor's Election to be Treated as Subchapter V Debtor Pursuant to 11 U.S.C. § 1182* (Doc. No. 118). On July 22, 2022, Randolph Abrahams and RedRidge Finance Group, LLC filed the *Reply to Debtor's Response to Objection to Debtor's Election to be Treated as Subchapter V Debtor Pursuant to 11 U.S.C. § 1182* (Doc. No. 124). Also on July 22, 2022, Luke LaHaie, ACAP SME, LLC and ACAP Fund GP, LLC filed the *Joinder to Reply to Debtor's Response to Objection to Debtor's Election to be Treated as Subchapter V Debtor Pursuant to 11 U.S.C. § 1182* (Doc. No. 125).

On July 27, 2022, the Court held a hearing on the Subchapter V Objection and corresponding pleadings. After evidence and testimony, the Court took the issues under advisement. On August 4, 2022, the Court issued a bench ruling sustaining the Subchapter V Objection. On August 8, 2022, the Court entered an order redesignating the Debtor's Chapter 11 Case from Subchapter V to an ordinary chapter 11 case (Doc. No. 137).

### 6. Exclusivity Motion

Following the Court's redesignation of this Chapter 11 Case as an ordinary Chapter 11 Case, on August 24, 2022, the Debtor filed the *Debtor's Motion for Entry of an Order (I) Extending the Debtor's Exclusive Period to File a Chapter 11 Plan, Nunc Pro Tunc, and Extending the Debtor's Exclusive Period to Solicit Acceptances of a Chapter 11 Plan Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* (Doc. No. 144) (the "**Exclusivity Motion**"). On August 31, 2022, Luke LaHaie, ACAP SME, LLC, and ACAP Fund

GP, LLC filed an objection to the Exclusivity Motion (Doc. No. 154). Randolph Abrahams and RedRidge Financing Group, LLC joined the objection to the Exclusivity Motion (Doc. No. 155).

On September 7, 2022, the Court held a hearing on the Exclusivity Motion and corresponding pleadings. On September 7, 2022, the Bankruptcy Court entered an order extending the Debtor's exclusive period for filing a plan through October 10, 2022, and extending the Debtor's exclusive period for soliciting a plan through December 9, 2022 (Doc. No. 164).

### 7.    DIP Financing

Since the beginning of this case, a group of Equity Holders of the Debtor has advised the Debtor that they were committed to funding the Debtor's bankruptcy case and Plan. Still, the Debtor has spent significant time during the Chapter 11 Case pursuing alternate financing to ensure the Debtor obtains financing on the best terms available. The Debtor provided due diligence and had good faith discussions with at least one third-party funding group. After months of negotiations, that third-party funding group declined to provide financing because the bankruptcy aspects of the proposed transaction were too complicated, but it invited the Debtor to re-engage post-Confirmation. The Debtor has since had discussions with a broker and other potential funding sources, but has not secured another source of financing.

On September 22, 2022, the Debtor filed the *Motion of the Debtor for Entry of a Final Order (I) Authorizing the Debtor to Obtain Post-Petition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Status, (III) Scheduling a Hearing, and (IV) Granting Related Relief* (Doc. No. 174) (the "**DIP Motion**") seeking authority to obtain the DIP Loan from Lender pursuant to the terms of the Term Sheet attached to the DIP Motion and attached hereto as **<u>Exhibit C</u>**. The Debtor's proposed DIP Loan has two components—"traditional" DIP funding to fund the costs of administering the Debtor's bankruptcy case and litigation funding to fund the costs of the Litigation. Under the Term Sheet, DIP Loan advances used to pay bankruptcy expenses unrelated to the Litigation would accrue interest at a fixed rate, as described in the Term Sheet. DIP Loan advances used to pay Litigation-related expenses would be repaid a multiple of the DIP Loan funds advanced, as described in the Term Sheet.

Since the Debtor's need to draw on the DIP Loan proposed in the DIP Motion is largely dependent upon whether the Debtor's Plan is confirmed in early December, the Debtor has requested that a hearing on the DIP Motion be scheduled on the same date as the Debtor's proposed Confirmation Hearing, with the Confirmation Hearing to proceed first. If the Debtor's Plan is confirmed, there will be no need for a hearing on the DIP Motion. If the Debtor's Plan is not confirmed, the hearing on the DIP Motion will proceed. If the Court does not grant interim approval of the Debtor's Disclosure Statement, the Debtor reserves the right to request an earlier hearing on the DIP Motion. The Debtor continues to pursue alternate DIP Loan financing options, as described more fully in the DIP Motion.

### 8.    Development of the Plan

On June 13, 2022, while this case was still designated as a subchapter V case, the Debtor filed its chapter 11 *Small Business Debtor's Plan of Reorganization* (Doc. No. 96), without a

disclosure statement, in accordance with subchapter V. After this Chapter 11 Case was redesignated as a traditional chapter 11 case, it became necessary for the Debtor to file a disclosure statement and amended plan. This Combined Plan and Disclosure Statement is being presented under the authority of a standard chapter 11 case.

**9.  PPP Loan**

On April 3, 2020, the Debtor applied for a PPP loan. The Debtor's PPP loan application was approved, and on April 8, 2020, the Debtor received a PPP loan in the amount of $722,100. On July 22, 2021, the Debtor submitted its PPP loan forgiveness application to the SBA. The SBA denied the Debtor's forgiveness application on February 23, 2022. The Debtor appealed, and on May 18, 2022, the SBA withdrew its initial loan review decision so it could further review the Debtor's loan forgiveness application. On October 18, 2022, the SBA again denied the Debtor's application for forgiveness. The Debtor intends to appeal the SBA's forgiveness determination.

## I.  **Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition transactions, but at this time the Debtor believes the Avoidance Actions have a value of approximately $3 million. The Debtor anticipates the Debtor or the Liquidating Trust completing its investigation by no later than March 14, 2024. By way of example only, and without limiting the nature and extent of any such claims that may be discovered, if you received a payment or other transfer of property within 90 days of bankruptcy, or if you are an "insider" within the meaning of 11 U.S.C. § 101(31) or a non-statutory insider and received a payment or other transfer of property within 1 year preceding the Debtor's bankruptcy filing, the Debtor or the Liquidating Trust may seek to avoid such transfer.

## IV.  **CONFIRMATION AND VOTING**

### A.  **Plan Confirmation Hearing**

The Bankruptcy Code, Bankruptcy Rules, and Local Rules require the Bankruptcy Court, after appropriate notice, to hold a hearing on approval and Confirmation of this Combined Plan and Disclosure Statement. On October 31, 2022, the Bankruptcy Court entered an order scheduling the Plan Confirmation Hearing for **December 15, 2022 at 10:00 a.m. (prevailing Eastern Time)**, to consider, among other things, final approval and Confirmation of this Combined Plan and Disclosure Statement under Section 1125 of the Bankruptcy Code. *See* Doc. No. 200. Notice of the Plan Confirmation Hearing will be provided to all known Creditors, Holders of Claims, and other parties in interest. The Confirmation Hearing may be adjourned from time to time by the Debtor without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

Any objection to Confirmation of this Plan and approval of the Disclosure Statement on a final basis must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims held or asserted by the objector against the Debtor,

the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to chambers, together with proof of service thereof, and served upon the following parties by no later than **December 5, 2022 at 4:00 p.m. (prevailing Eastern Time)** through the CM/ECF system, with courtesy copies by email to: (1) counsel to the Debtor, Baker & Hostetler LLP, Key Tower, 127 Public Square, Suite 2000, Cleveland, Ohio 44114 (Attn: Michael A. VanNiel, Esq., mvanniel@bakerlaw.com; Alexis C. Beachdell, Esq., abeachdell@bakerlaw.com; and Scott E. Prince, Esq., sprince@bakerlaw.com); Baker & Hostetler LLP, 1201 N. Market Street, 14th Floor, Wilmington, DE 19801 (Attn: Jeffrey J. Lyons, Esq., jjlyons@bakerlaw.com); (2) Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, (Attn: Linda Casey, Esq., Linda.Casey@usdoj.gov); and (3) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to approval and Confirmation of this Combined Plan and Disclosure Statement. **UNLESS AN OBJECTION TO APPROVAL AND CONFIRMATION OF THIS COMBINED PLAN AND DISCLOSURE STATEMENT IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING WHETHER TO APPROVE AND CONFIRM THIS COMBINED PLAN AND DISCLOSURE STATEMENT.**

## B. Requirements for Plan Confirmation

The Bankruptcy Court will confirm this Plan only if it meets all the applicable requirements of Section 1129 of the Bankruptcy Code. Among the requirements for Confirmation in this Chapter 11 Case is that this Plan be (i) accepted by all impaired Classes of Claims or, if rejected by an impaired Class, that this Plan "does not discriminate unfairly" against and is "fair and equitable" with respect to such Class; and (ii) feasible. The Bankruptcy Court must also find, among other things, that:

a.  this Plan has classified Claims in a permissible manner;

b.  this Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and

c.  this Plan has been proposed in good faith.

## C. Best Interests of the Creditors Test

The Bankruptcy Code requires that, with respect to an impaired class of claims or interests, each holder of an impaired claim or interest in such class either (i) accept the plan or (ii) receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount (value) such holder would receive or retain if the debtor was liquidated under chapter 7 of the Bankruptcy Code on the effective date.

The costs of a chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that a chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other

costs of liquidating the Debtor's Estate would include the expenses incurred during the Chapter 11 Case and allowed by the Bankruptcy Court in the chapter 7 case. The foregoing types of claims, costs, expenses, and fees that may arise in a chapter 7 liquidation case would be paid in full before payments would be made towards chapter 11 administrative, priority, and unsecured claims. Like a chapter 7 trustee, the Liquidating Trustee will have the power to retain professionals, but unlike a chapter 7 trustee's professionals, the Bankruptcy Court does not need to approve the retention of such professionals, or their fees. The "learning curve" that the chapter 7 trustee and new professionals would be faced with comes with potential additional costs to the Estate and with a delay compared to the anticipated timing of Distributions under the Plan. Furthermore, a chapter 7 trustee would be entitled to statutory fees relating to the Distributions. Accordingly, a portion of the Cash that will be available for distribution to Holders of Allowed Claims would instead be paid to the chapter 7 trustee. Notwithstanding, like the chapter 7 trustee, the Liquidating Trustee also will be paid fees for his or her services.

Accordingly, as demonstrated in the liquidation analysis attached hereto as **Exhibit B**, the Debtor believes that in a chapter 7 liquidation, Holders of Claims would receive less than such Holders would receive under this Plan. There can be no assurance, however, as to values that would actually be realized in a chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtor's conclusions or concur with such assumptions in making its determinations under Section 1129(a)(7) of the Bankruptcy Code.

D.     **Plan Feasibility**

Pursuant to Section 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan is not likely to be followed by the liquidation or need for further financial reorganization of the debtor under the plan, unless such liquidation or reorganization is proposed under the plan. Pursuant to the Plan, the Debtor's assets are being transferred to the Liquidating Trust. These assets will be liquidated and distributed to Holders of Allowed Claims pursuant to the terms of this Plan. Therefore, as this is a liquidating plan, the Bankruptcy Court's Confirmation of this Plan will not be followed by liquidation or the need for any further reorganization.  The Debtor has also secured financing to fund the payments required to be funded on the Effective Date, as set forth in the Term Sheet.

E.     **Classification of Claims**

Section 1122 of the Bankruptcy Code requires the Plan to place a Claim in a particular Class only if such Claim is substantially similar to the other Claims in such Class. This Plan creates separate classes to treat Priority Non-Tax Claims, Employee Severance Claims, Litigation Defendant Claims, King & Spalding Claims, General Unsecured Claims, Intercompany Receiver Claims, SEC Claims, Miscellaneous Indemnity Claims and Equity Interests of the Debtor. The Plan Proponent believes that the Plan's classification scheme places substantially similar Claims in the same Class and, thus, meets the requirements of Section 1122 of the Bankruptcy Code.

**EXCEPT AS SET FORTH IN THE PLAN OR UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 3019(A), UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A**

**HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The classification of Claims and the nature of Distributions to members of each Class are summarized herein. The Plan Proponent believes that the consideration, if any, provided under the Plan to Holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims, and potential alternative sources of recovery available to the Holders of Claims. The Bankruptcy Court, however, must find that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of Holders of Claims who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

## F.      Impaired Claims

Pursuant to Section 1126 of the Bankruptcy Code, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a Distribution under this Plan may vote on this Plan. Pursuant to Section 1124 of the Bankruptcy Code, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable, or contractual rights of the Holders of such Claims treated in such Class. The Holders of Claims not Impaired by the Plan are deemed to accept the Plan and do not have the right to vote on the Plan. The Holders of Claims in any Class that will not receive any Distribution or retain any property pursuant to this Plan are deemed to reject this Plan and do not have the right to vote.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 2, 3, 4, 5, 6, 7 and 8.**

## G.      Eligibility to Vote on this Plan

Unless otherwise ordered by the Bankruptcy Court, only Holders of Allowed Claims in Classes 2, 3, 4, 5, 6, 7 and 8 may vote on this Plan. To vote on this Plan, you must hold an Allowed Claim in Class 2, 3, 4, 5, 6, 7 or 8 or be the Holder of a Claim that has been temporarily Allowed for voting purposes under Bankruptcy Rule 3018(a).

## H.      Voting Procedures and Deadlines

For your Ballot to count, you must (1) properly complete, date, and execute the Ballot and (2) deliver the Ballot to the Debtor's counsel at: Baker & Hostetler LLP, Key Tower, 127 Public Square, Suite 2000, Cleveland, Ohio 44114, Attn: Alexis C. Beachdell.

The Debtor must **RECEIVE** original Ballots on or before **December 5, 2022 at 5:00 p.m. (prevailing Eastern Time)**. Except as otherwise ordered by the Bankruptcy Court, you may not change your vote once a Ballot is submitted to the Debtor.

Except as otherwise stated in this Plan, the following tabulation rules will be utilized for tabulating the Ballots in determining whether this Plan has been accepted or rejected by the Class in which such Holder holds a Claim:

  i.  any Ballot that is timely received, that contains sufficient information to permit the identification of the claimant and that is cast as an acceptance or rejection of the Plan will be counted and cast as an acceptance or rejection, as the case may be, of the Plan. Except as otherwise ordered by the Bankruptcy Court, a claimant may not change its vote once a Ballot is submitted;

  ii.  any Ballot that is illegible or contains insufficient information to permit the identification of the claimant will not be counted;

  iii.  any Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan will not be counted;

  iv.  any Ballot cast for a Claim designated or determined as unliquidated, contingent, or disputed or as zero or unknown in amount and for which no Bankruptcy Rule 3018 motion has been filed and ruled upon by the Bankruptcy Court will not be counted;

  v.  any Ballot timely received that is cast in a manner that indicates neither acceptance nor rejection of the Plan or that indicates both acceptance or rejection of the Plan will not be counted;

  vi.  any Ballot received by the Debtor after the Voting Deadline will not be counted;

  vii.  any Ballot not bearing an original signature will not be counted; and

  viii.  any Ballot received by the Debtor by facsimile, e-mail, or other electronic communication will not be counted.

## I.  <u>Acceptance of this Plan</u>

As a Creditor, your acceptance of this Plan is important. For this Plan to be accepted by an impaired Class of Claims, a majority in number (*i.e.*, more than half) and two-thirds in dollar amount of the Claims voting (of each Impaired Class of Claims) must vote to accept this Plan. At least one impaired Class of Creditors, excluding the votes of insiders, must actually vote to accept this Plan. The Plan Proponent strongly urges that you vote to accept this Plan, but you are not required to accept it and failure to accept will not preclude you from receiving a Distribution under this Plan to which you are entitled. **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY RETURN THE BALLOT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF**

**YOUR CLAIM AND THE NAME OF THE CREDITOR AND INCLUDE AN ORIGINAL SIGNATURE ON THE BALLOT.**

**J.    Elimination of Vacant Classes**

Any Class of Claims that does not contain, as of the date of commencement of the Plan Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from this Combined Plan and Disclosure Statement for all purposes, including for purposes of determining acceptance of this Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code.

## V.    TREATMENT OF UNCLASSIFIED CLAIMS

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expense Claims and Priority Tax Claims are not classified. They are not considered impaired, and Holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any Class:

**A.    Administrative Expense Claims**

Unless otherwise set forth herein (including as set forth below with respect to amounts owed under the DIP Loan and certain Administrative Expense Claims held by King & Spalding) or otherwise agreed by the Holder of an Administrative Expense Claim and the applicable Debtor or the Liquidating Trustee, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash by the Debtor or Liquidating Trust, as applicable: (a) if such Claim is Allowed on the Effective Date, on the Effective Date, (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as practicable thereafter); (b) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed; (c) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or Liquidating Trust, as applicable; or (d) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

With respect to any Administrative Expense Claim that may be held by Lender with respect to the DIP Loan, Lender agrees that such Administrative Expense Claim shall be rolled into the Plan Loan and paid pursuant to the terms of the Plan Loan as set forth in the Term Sheet. For the avoidance of doubt, (i) any DIP Loan advances used to pay non-Litigation Expenses (as defined in the Term Sheet) shall be treated the same as Plan Loan advances used to pay non-Litigation Expenses, and (ii) any DIP Loan advances used to pay Litigation Expenses (as defined in the Term Sheet) shall be treated the same as Plan Loan advances used to pay Litigation Expenses. The Liquidation Analysis and Term Sheet provide information about estimated Administrative Expense Claims.

With respect to any Administrative Expense Claim that may be held by King & Spalding with respect to any services provided by King & Spalding after the Petition Date, the first source of recovery for any Allowed Administrative Expense Claim of King & Spalding with respect to fees and expenses not related to the Litigation (including fees and expenses incurred in

connection with the SEC Investigation and Defamation Litigation) shall be the Debtor's Insurance Policies; provided, for the avoidance of doubt, any such Allowed Administrative Expense Claims not paid in full from the Debtor's Insurance Policies shall be paid in full similar to other Allowed Administrative Expense Claims set forth above.  Any Allowed Administrative Expense Claim of King & Spalding with respect to fees and expenses related to the Litigation shall be paid in full similar to other Allowed Administrative Expense Claims; provided, however, that such amounts shall be applied to and subject to the Discovery Cap described in Section VII.A.4 below.

For the avoidance of doubt, with respect to fees and expenses owed to King & Spalding for services provided before the Petition Date, King & Spalding shall be permitted to retain and apply payments received under the Debtors' Insurance Policies for any such prepetition fees and expenses (including any proceeds King & Spalding has already received and is holding in escrow) whether received before or after the Petition Date.  Nothing herein (including the treatment of King & Spalding's Administrative Expense Claims) shall otherwise impair or limit in any way any such insurer's liability under the Debtors' Insurance Policies or King & Spalding's entitlement to be reimbursed and continue to be reimbursed for fees and expenses covered under the Insurance Policies (whether arising before or after the Petition Date).

**B.**  **Professional Fee Claims**

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on the parties required by the Bankruptcy Code an application for final allowance of such Professional Fee Claim no later than twenty-one (21) days after the Effective Date (with an objection period of at least twenty-one days for objections, if any, to such applications).  Objections to any Professional Fee Claim must be timely filed and served on the requesting party.   Upon the entry of a Final Order approving any such application for Professional Fee Claims, the Liquidating Trustee shall promptly pay any unpaid portion of such Allowed Professional Fee Claim.  The Liquidation Analysis and Term Sheet provide information about estimated Professional Fee Claims.

**C.**  **Priority Tax Claims**

On the later of the Effective Date or the date on which a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, but in no event later than 30 days after such event, each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date will receive Cash from the Debtor or Liquidating Trust, as applicable, on account of such Claim in an amount equal to the Allowed amount of such Claim plus, to the extent applicable, any amount required to comply with section 1129(a)(9)(C) or 1129(a)(9)(D) of the Bankruptcy Code.

## VI.  CLASSIFICATION OF CLAIMS AND INTERESTS; ESTIMATED RECOVERIES

Claims—other than Administrative Expense Claims and Priority Tax Claims—are classified for all purposes, including voting, Confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Type | Treatment | Voting Status | Recovery Estimate |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept | 100% |
| 2 | Employee Severance Claims | Impaired | Entitled to vote | 100% |
| 3 | Litigation Defendant Claims | Impaired | Entitled to vote | Unknown |
| 4 | King & Spalding Claims | Impaired | Entitled to vote | Unknown |
| 5 | General Unsecured Claims | Impaired | Entitled to vote | Unknown |
| 6 | Intercompany Receiver Claims | Impaired | Entitled to vote | Unknown |
| 7 | SEC Claims | Impaired | Entitled to vote | Unknown |
| 8 | Miscellaneous Indemnity Claims | Impaired | Entitled to vote | Unknown |
| 9 | Equity Interests | Impaired | Deemed to reject | 0% |

## VII.    TREATMENT OF CLAIMS AND INTERESTS

The following are the Classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A.    Classification and Treatment of Claims and Interests

**1.    Class 1 – Priority Non-Tax Claims**

    a.    *Classification:*  Class 1 consists of Allowed Priority Non-Tax Claims. Class 1 Claims are Claims for unpaid wages and related amounts asserted by former employees of the Debtor who were not officers or directors of the Debtor.

    b.    *Treatment:*  Unless otherwise agreed to by the Holder of an Allowed Priority Non-Tax Claim, on the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive one of the following treatments, in the sole discretion of the Debtor or Liquidating Trustee: (a) full payment in Cash of its Allowed Priority Non-Tax Claim; or (b) treatment of its Allowed Priority Non-Tax Claim in some other manner that leaves such Claim Unimpaired.

    c.    *Sources of Recovery:*  Plan Loan.

    d.    *Voting:*  Class 1 is Unimpaired, and the Holders of Allowed Priority Non-Tax Claims are conclusively deemed to have accepted this Plan

**2.    Class 2 – Employee Severance Claims**

    a.    *Classification:*  Class 2 consists of Allowed Employee Severance Claims. Allowed Employee Severance Claims are Claims for the balance of unpaid

employee wage claims and related amounts that remain after payment of Priority Non-Tax Claims.

b. *Treatment:* To the extent an such Claim has not been paid in full as a Class 1 Priority Non-Tax Claim, each Holder of an Allowed Employee Severance Claim shall receive (i) on the Effective Date, a payment equal to 80% of the Allowed Employee Severance Claim, and (ii) on the date that is the earlier of (a) thirty (30) days after the Litigation Recovery Date or (b) 180 days after the Effective Date, a payment equal to 20% of the Allowed Employee Severance Claim.

c. *Sources of Recovery:* Plan Loan or Litigation Recovery, depending on the timing of any Litigation Recovery, as described above.

d. *Voting:* Class 2 is Impaired. Under the Voting Procedures, all Holders of Class 2 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes. Holders of Allowed Employee Severance Claims are entitled to vote to accept or reject the Plan.

**3.    Class 3 – Litigation Defendant Claims**

a. *Classification:* Class 3 consists of Allowed Litigation Defendant Claims. Class 3 Claims include all Claims asserted by the Defendants against the Debtor. Holders of Class 3 Claims have asserted that they hold secured claims against the Debtor because they may set off Claims they have against the Debtor against the liability they owe to the Debtor. The Debtor disagrees that the Litigation Defendant Claims are in fact secured by property of the Estate or are subject to set off.

b. *Treatment:* Each Holder of an Allowed Litigation Defendant Claim shall be entitled to (i) seek payment of such Allowed Litigation Defendant Claim from the Insurance Policies, to the extent available; (ii) have such Allowed Litigation Defendant Claim tried as to liability and amount owed as part of the Litigation or Defamation Litigation, as applicable; (iii) upon the conclusion of the Litigation or Defamation Litigation, as applicable, retain whatever set off rights such Holder would have had against the Debtor or the Liquidating Trust given the final outcome of the Litigation or Defamation Litigation, as applicable; provided, however, that the enforceability of such set off rights shall be determined in the Bankruptcy Court; and (iv) to the extent (a) the Holder is determined to have an Allowed Litigation Defendant Claim against the Debtor and (b) is not found liable to the Debtor or the Liquidating Trust in the Litigation in any amount, to be treated as a Class 5 General Unsecured Creditor with respect to such Allowed Litigation Defendant Claim amount that is not paid from the Insurance Policies.

To be clear, after a final, unappealable decision is entered with respect to both the Debtor's claims and the Claims of a Defendant in the Litigation and Defamation Litigation, as applicable, a Defendant may ask the Bankruptcy Court to authorize such Defendant to set off its liability to the Debtor or the Liquidating Trust against the Debtor's liability to such Defendant. The Bankruptcy Court will determine whether such set off is authorized under the Bankruptcy Code.

For further avoidance of doubt, no Holder of a Class 3 Litigation Defendant Claim shall have a right, post-Confirmation, to seek ongoing indemnity, advancement, contribution, or similar claims from the Liquidating Trust. Such amounts shall be payable, if at all, only as pre-petition Class 3 Claims as set forth herein.

c. *Sources of Recovery:* Insurance Policies and Liquidating Trust Assets.

d. *Voting:* Class 3 is Impaired. Under the Voting Procedures, all Holders of Class 3 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes. Holders of Allowed Litigation Defendant Claims are entitled to vote to accept or reject the Plan.

4. **Class 4 – King & Spalding Claims**

a. *Classification:* Class 4 consists of Allowed King & Spalding Claims. The only Class 4 Claim is the Claim filed by King & Spalding, the law firm representing the Debtor in the Litigation who is akin to a critical vendor in this Chapter 11 Case. As part of the settlement between King & Spalding and the Debtor, King & Spalding has agreed to convert from a purely hourly fee arrangement to a hybrid contingency fee arrangement, as a concession to the Debtor to facilitate the monetization of the Litigation and, ultimately, the Plan.

b. *Treatment:* King & Spalding's sole source of recovery for the portions of the King & Spalding Claim that are not related to the Litigation (including portions of the King & Spalding Claim related to the SEC Investigation and Defamation Litigation) shall be (i) the Debtor's Insurance Policies, and (ii) solely to the extent not paid from the Insurance Policies, treatment as a Class 5 General Unsecured Creditor with respect to such amounts. For the avoidance of doubt, with respect to amounts owed to King & Spalding for services provided before the Petition Date, King & Spalding shall be permitted to retain and apply payments received under the Debtors' Insurance Policies for any such prepetition amounts owed (including any proceeds King & Spalding has already received and is holding in escrow) whether received before or after the Petition Date. Nothing herein shall otherwise impair or limit in any way any such insurer's liability under the Debtors' Insurance Policies or King & Spalding's entitlement to be reimbursed and continue to be reimbursed for

fees and expenses covered under the Insurance Policies, whether arising before or after the Petition Date.

With respect to those portions of the King & Spalding Claim that are related to the Litigation, on the Effective Date, King & Spalding shall receive a payment in the amount of $500,000. In addition, on the Effective Date, King & Spalding shall enter into an amended Engagement Agreement that reflects the new hybrid contingency arrangement with the Liquidating Trust and World Trade providing that:

- King & Spalding's fees and other legal expenses of the Litigation from the Petition Date until the close of discovery shall be capped at $2 million, with the understanding that no more than $1 million of such amounts will be paid by the DIP Loan or Plan Loan described herein (collectively, the "**Discovery Cap**");

- King & Spalding's unpaid fees and expenses related to the Litigation, including (i) unpaid pre-petition fees up to $1.15 million and (ii) any discovery expenses in excess of the $1 million but no greater than $2 million, shall be considered "**At Risk Fees**." For the avoidance of doubt, any post-petition fees which the Court does not allow shall not be paid and shall not be considered At Risk Fees.

- Upon any Litigation Recovery, the first payment shall go to King & Spalding to compensate King & Spalding for the At Risk Fees, and shall be charged to the shares of the Liquidating Trust and World Trade in proportion to the Litigation Recovery amount in their favor.
  - o If the total Litigation Recovery is at least $10 million, King & Spalding shall receive a premium totaling (across both the Liquidating Trust's and World Trade Finance's shares) twice the unpaid At Risk Fees.
  - o If the total Litigation Recovery is at least $20 million, King & Spalding shall receive a premium totaling (across both the Liquidating Trust's and World Trade Finance's shares) three times the unpaid At Risk Fees.

- It is understood that the Liquidating Trust and World Trade shall retain the right, subject to Bankruptcy Court approval, to further revise the agreement with King & Spalding and the Lender as needed to continue the Litigation in the event the Litigation does not resolve by the end of discovery.

In addition to any Distributions received under this Plan, King & Spalding may also receive separate payments from World Trade as payment for World Trade's allocated portion of Litigation expenses.

c.   *Sources of Recovery:*  Insurance Policies, Litigation Recovery and World Trade Payments.

d.   *Voting:*  Class 4 is Impaired.  Under the Voting Procedures, all Holders of Class 4 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes. Holders of Allowed King & Spalding Claims are entitled to vote to accept or reject the Plan.

**5.   Class 5 – General Unsecured Claims**

a.   *Classification:*  Class 5 consists of Allowed General Unsecured Claims.

b.   *Treatment:*  Each Holder of an Allowed General Unsecured Claim shall receive a Pro Rata Share of Beneficial Interests in the Liquidating Trust entitling the Holder to a Pro Rata Share of all Available Trust Cash derived from the Debtor's Liquidating Trust Assets.

c.   *Sources of Recovery:*  Liquidating Trust Assets.

d.   *Voting:*  Class 5 is Impaired.  Under the Voting Procedures, all Holders of Class 5 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

**6.   Class 6 – Intercompany Receiver Claims**

a.   *Classification:*   Class 6 consists of Allowed Intercompany Receiver Claims. The only Class 6 Claim is the Claim filed by the receiver on behalf of the Funds asserting joint and several liability among the Debtor and World Trade.

b.   *Treatment:*  The Holder of an Allowed Intercompany Receiver Claim shall be treated as a Class 5 General Unsecured Creditor with respect to such Allowed Intercompany Receiver Claim; provided, however, that the amount of any Allowed Intercompany Receiver Claim shall be reduced by the amount of any World Trade Payments made to the Holder of such Allowed Intercompany Receiver Claim, thus reducing the Distribution to the Holder of an Allowed Intercompany Receiver Claim.

c.   *Sources of Recovery:*   Liquidating Trust Assets and World Trade Payments.

d.    *Voting:*  Class 6 is Impaired.  Under the Voting Procedures, all Holders of Class 6 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes. Holders of Allowed Intercompany Receiver Claims are entitled to vote to accept or reject the Plan.

7.    **Class 7 – SEC Claims**

a.    *Classification:*  Class 7 consists of Allowed SEC Claims.  The only Class 7 Claim is the Claim filed by the SEC.

b.    *Treatment:*  At any time, the SEC may commence an action or proceeding in an appropriate nonbankruptcy forum to set or determine the amount of disgorgement and any fines and/or penalties to be imposed on the Debtor under its normal procedures.  The Liquidating Trustee may, at its option, litigate or settle such action by the SEC prior to or after the completion of such proceedings and any Final Orders entered in such proceedings or settlements shall be Allowed Claims herein.  The Holder of an Allowed SEC Claim shall be treated as a Class 5 General Unsecured Creditor with respect to such Allowed SEC Claim; provided, however, that the amount of any Allowed SEC Claim shall be reduced by the amount of any payments made to the Holder of such Allowed SEC Claim from the Debtor's Insurance Policies, thus reducing the Distribution to the Holder of an Allowed SEC Claim; further provided, however, that nothing herein shall require the SEC to accept payments from the Debtor's Insurance Policies in violation of any rule or policy of the SEC.

c.    *Sources of Recovery:*  Insurance Policies and Liquidating Trust Assets.

d.    *Voting:*  Class 7 is Impaired.  Under the Voting Procedures, all Holders of Class 7 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes.  The Holders of SEC Claims are entitled to vote to accept or reject the Plan.

8.    **Class 8 – Miscellaneous Indemnity Claims**

a.    *Classification:*  Class 8 consists of Allowed Miscellaneous Indemnity Claims.  Class 8 Claims are Claims for contingent advancement and indemnity obligations asserted by former officers and directors of the Debtor.  These Claims differ from Litigation Defendant Claims in that the Debtor has not filed suit against Holders of these Claims, and these Claims appear not to purport to be secured by setoff rights.

b.    *Treatment:*  Each Holder of an Allowed Miscellaneous Indemnity Claim shall be entitled to pursue payment of such Claim from the Insurance Policies.  Holders of Allowed Miscellaneous Indemnity Claims shall not be treated as Class 5 General Unsecured Creditors, shall not be entitled to receive a Pro Rata Share of Available Trust Cash derived from the

Debtor's Liquidating Trust Assets and shall not otherwise participate in any Distributions on account of such Claims.

For the avoidance of doubt, no Holder of a Class 8 Miscellaneous Indemnity Claim will have a right, post-Confirmation, to seek ongoing indemnity, advancement, contribution, or similar claims from the Debtor or the Liquidating Trust. Such amounts shall be payable, if at all, only as pre-petition Claims under the procedures herein.

    c.    *Sources of Recovery:* Insurance Policies.

    d.    *Voting:* Class 8 is Impaired. Under the Voting Procedures, all Holders of Class 8 Claims shall have a claim temporarily allowed as set forth in **Exhibit D** for voting purposes. Holders of Allowed Miscellaneous Indemnity Claims are entitled to vote to accept or reject the Plan.

**9.**    **Class 9 – Equity Interests**

    a.    *Classification:* Class 9 consists of all Equity Interests in the Debtor.

    b.    *Treatment:* Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. In a limited liability company ("**LLC**"), the Equity Interest holders are the members. Equity Interests will be cancelled under the Plan. Notwithstanding the forgoing cancellation, to the extent there are Litigation Trust Assets remaining after all Allowed Claims in Classes 1 – 8 are paid in full pursuant to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall distribute those Liquidating Trust Assets to Holders of cancelled Equity Interests *pro rata*, subject to further order of the Bankruptcy Court

    c.    *Sources of Recovery:* No recovery.

    d.    *Voting:* Class 9 is Impaired and shall not receive any property or distributions on account of Equity Interests unless there are Litigation Trust Assets remaining after all Allowed Claims in Classes 1 – 8 are paid in full. The Holders of Equity Interests are conclusively deemed to have rejected the Plan.

## VIII.   THE LIQUIDATION OF THE DEBTOR

**A.**    **Formation of the Liquidating Trust**

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, among other things, (i) investigating and pursuing the Causes of Action, (ii) administering, monetizing and liquidating the Liquidating Trust Assets, (iii) resolving all Disputed Claims and (iv) making all Distributions from the Liquidating Trust as provided for in the Plan and the Liquidating Trust Agreement. The

Liquidating Trust and Liquidating Trustee shall be authorized to take such actions including, without limitation, the settlement of any Claims, Causes of Action and Avoidance Actions, without further order of the Bankruptcy Court; provided, however, that the Liquidating Trustee may seek such Bankruptcy Court authority as the Liquidating Trustee, in its absolute discretion, deems necessary or appropriate. The transfer of the Liquidating Trust Assets attributable to the Beneficiaries of the Liquidating Trust shall be treated as a transfer of assets directly to such Beneficiaries followed by a contribution of the Liquidating Trust Assets to the Liquidating Trust.

## IX. PROVISIONS REGARDING THE LIQUIDATING TRUST

### A. Vesting of the Debtor's Assets in the Liquidating Trust Free and Clear

On the Effective Date, all property of the Debtor, tangible and intangible, including, without limitation, Causes of Action, will vest in the Liquidating Trust. Such transfer shall be free and clear of Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein.

### B. Material Terms of the Liquidating Trust

The following provisions are intended to summarize the material terms of the Liquidating Trust Agreement, which shall control the formation, operations, and dissolution of the Liquidating Trust. In the event of a conflict between the terms of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Plan shall control.

**1. Purpose of the Liquidating Trust.** The Liquidating Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the pursuit of a trade or business.

**2. Liquidating Trustee.** The Liquidating Trustee shall be Thomas Pratt of Applied Business Strategy. The Debtor's designation of the Liquidating Trustee shall be effective as of the Effective Date without the need for further order of the Bankruptcy Court.

**3. Authority of Liquidating Trustee.** Subject only to limitations contained in the Plan or the Liquidating Trust Agreement, the Liquidating Trustee shall have, by way of illustration and not limitation, the following duties, responsibilities, authorities, and powers: (A) the power and authority to hold, manage, sell, and distribute Liquidating Trust Assets in accordance with the Plan, including pursuing the Litigation or other Causes of Action and authorizing transactions on behalf of World Trade; (B) the power and authority to prosecute and resolve objections to Claims against the Debtor that are payable from the Liquidating Trust; (C) the power and authority to perform such other functions as are provided in the Plan and Liquidating Trust Agreement; (D) the power to take any other action the Liquidating Trustee deems in the best interest of the Liquidating Trust; and (E) the power to take such other and further actions as the Liquidating Trustee deems necessary and appropriate to implement the provisions of this Plan.

**4. Governance of the Liquidating Trust.** The Liquidating Trust shall be governed in accordance with the Liquidating Trust Agreement and consistent with the Plan. The

Liquidating Trust Agreement shall be filed with the Plan Supplement. The Liquidating Trust Agreement is incorporated herein in full and is made a part of this Plan.

5. **Distributions to Holders of Allowed Claims.** The Liquidating Trustee shall be responsible for making Distributions from the Liquidating Trust as provided in the Plan and the Liquidating Trust Agreement. Any Liquidating Trust Assets available for distribution shall be applied (a) first, to pay or reimburse, as applicable, the reasonable, documented out of pocket fees, costs, expenses, and liabilities of the Liquidating Trust and the Liquidating Trustee, (b) second, to Distributions to Holders of Beneficial Interests.

6. **Compensation of the Liquidating Trustee and Professionals.** The Liquidating Trustee and his retained professionals (if any) shall be entitled to reasonable compensation from the Liquidating Trust as set forth in the Liquidating Trust Agreement.

7. **Dissolution.** The Liquidating Trust and the Liquidating Trustee shall be discharged or dissolved, as the case may be, at such time as all Distributions required to be made by the Liquidating Trust under the Plan have been made, but in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date, absent Bankruptcy Court approval.

8. **Indemnification of the Liquidating Trustee.** The Liquidating Trustee and his agents and professionals shall be indemnified and held harmless for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trust or the Liquidating Trustee, except for those acts arising primarily and directly out of its or their own willful misconduct, gross negligence, or bad faith, and each shall be entitled to indemnification and reimbursement for fees and expenses incurred in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trust or the Liquidating Trustee. Any indemnification claim of the Liquidating Trustee, his agents or professionals, shall be satisfied from the Liquidating Trust as such costs or expenses are incurred. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals.

## C. Preservation of Causes of Action

On the Effective Date, the Causes of Action, including, without limitation the Avoidance Actions, shall be vested exclusively in the Liquidating Trust, except to the extent a Creditor or other third party has, prior to the Effective Date, been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Liquidating Trust will have the rights, powers, and privileges to pursue, not pursue, settle, release, or enforce any Cause of Action without seeking approval from the Bankruptcy Court. The Debtor is currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. Any Person that engaged in business or other transactions with the Debtor prior to the Debtor's Petition Date or that received payments from the Debtor prior to the Debtor's Petition Date may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

No Creditor or other Person should vote for the Plan or otherwise rely on Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will

obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Causes of Action. THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION, AVOIDANCE ACTIONS, OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims, and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor or the Liquidating Trust to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim, or Causes of Action against a particular Creditor in the Plan or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or the Liquidating Trust does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. IT IS THE EXPRESSED INTENTION OF THE PLAN TO PRESERVE RIGHTS, CLAIMS, AND CAUSES OF ACTION AND AVOIDANCE ACTIONS OF THE DEBTOR, WHETHER NOW KNOWN OR UNKNOWN, FOR THE BENEFIT OF THE DEBTOR'S ESTATE, ITS CREDITORS, AND THE LIQUIDATING TRUST. To the fullest extent allowed under applicable law, nothing in the Plan operates as a release of any Cause of Action, including any Avoidance Action, except as expressly provided otherwise, nor shall the Debtor's failure to describe with specificity any Causes of Action estop or preclude the Liquidating Trust from pursuing such Causes of Action.

## D. Effectiveness of Securities, Instruments, and Agreements

On the Effective Date, all documents or agreements entered into or documents issued pursuant to the Plan or in connection with the Plan shall become effective and binding upon the parties thereto in accordance with their respective terms and conditions and shall be deemed to become effective simultaneously.

## E. Term of Injunction or Stays

Unless otherwise expressly provided herein, all injunctions arising under or entered during the Chapter 11 Case, including, without limitation, any injunctions provided for in the Confirmation Order, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Case.

## F. Payments

Payments to Creditors provided for in the Plan will be made either by the Debtor on the Effective Date of the Plan or by the Liquidating Trustee pursuant to the terms of the Plan and the Liquidating Trust Agreement.

## G. Post-Confirmation Management

The Debtor will not have post-Confirmation management. Administration of the Plan will be handled by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall be authorized to take action on behalf of the Debtor to the extent necessary to implement the provisions of this Plan.

# X. PLAN FINANCING

## A. Contribution of the Debtor's Assets to the Liquidating Trust

On the Effective Date, all property of the Debtor, tangible and intangible, including, without limitation, Causes of Action, Avoidance Actions, and any future earning or other future income of the Debtor, will vest in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the terms of the Plan and the Liquidating Trust Agreement.

## B. Plan Loan

The Debtor has negotiated a Plan Loan with Lender on the terms set forth in the Term Sheet attached hereto as **Exhibit C** and incorporated herein by reference. To be clear, any DIP Loan amounts provided for in the Term Sheet that have not been disbursed prior to the Effective Date will be rolled into the available amount of the Plan Loan. The Debtor believes the Plan Loan is sufficient to satisfy all amounts required for this Plan to be confirmed and for the Effective Date to occur.

Under the Plan Loan, in addition to certain fees, the interest rate or return to which Lender is entitled depends on the use of the Plan Loan advances. Plan Loan advances used to fund Plan expenses that are not Litigation Expenses (as defined in the Term Sheet) will accrue interest at a fixed rate of interest of 35% per annum. Plan Loan advances used to fund Litigation Expenses (as defined in the Term Sheet) will receive a return akin to a "litigation funding" return as follows: (i) if the Litigation settles and Litigation Recoveries therefrom are paid within one year, Lender will receive a 250% return on the Litigation Expenses advanced pursuant to the Plan Loan; and (ii) if the Litigation settles and Litigation Recoveries therefrom are paid after one year, Lender will receive a 350% return on the Litigation Expenses advanced pursuant to the Plan Loan. Certain expenses will be carved out of the return owed to Lender as set forth in the Term Sheet.

Upon any Litigation Recovery, after payment of the King & Spalding Claims, Lender shall be repaid for any amounts due and owing under the DIP Loan or the Plan Loan, as set forth in the Term Sheet, including, but not limited to all accrued interest, fees, and litigation funding returns, prior to any proceeds from the Litigation Recovery being disbursed to any other party. Furthermore, for the avoidance of doubt, any cash on hand, proceeds from Avoidance Actions or other Causes of Action, shall be used to compensate professionals, and pay other Administrative Expense Claims, prior to the use of Plan Loan or DIP Loan advances.

The Debtor is continuing to seek alternate financing on terms that are more advantageous than the Plan Loan. The Debtor or the Liquidating Trustee, as the case may be, reserves the right to amend the terms of the Plan Loan or enter into alternate financing, subject to Bankruptcy Court approval.

# XI. CLAIMS OBJECTIONS

To minimize unnecessary litigation expense for both the Debtor and its Creditors, the Debtor and Liquidating Trust intend to defer evaluating Claims or making any objection to the amount, validity or priority of any Claim until it appears there are sufficient funds to make a

Distribution.  Notwithstanding the foregoing, the Debtor or the Liquidating Trust may object to the amount, validity or priority of any Claim at any time up to one (1) year after the later of (i) the Liquidating Trust receiving Liquidating Trust Assets in excess of one million dollars ($1,000,000), or (ii) the final, unappealable resolution of the Litigation in its entirety.  This may be done by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim (or, in the case of Class 3 Claims, by defending counterclaims brought against the Debtor or the Liquidating Trust by a Defendant).  Such deadline may be extended by the Court in its discretion.  The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

## XII.  EXECUTORY CONTRACTS

### A.  Rejection of Executory Contracts and Unexpired Leases

This Plan shall constitute a motion to reject all Executory Contracts and unexpired leases not previously rejected pursuant to an order of the Bankruptcy Court unless otherwise set forth in the Plan Supplement, and the Debtor shall have no further liability thereunder.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to section 365(a) and 1123 of the Bankruptcy Code and a determination that the rejection thereof is in the best interest of the Debtor, its Estate and all parties in interest in the Chapter 11 Case.  The foregoing information shall be included in the notice of entry of the Confirmation Order.  Notwithstanding the foregoing, to the extent any insurance policies of the Debtor, including the Insurance Policies, are deemed to be an Executory Contract, the Debtor does not seek to reject such insurance policies through this general rejection provision and such insurance policies shall be deemed to be assumed under the Plan.

### B.  Claims Based on Rejection of Executory Contracts or Unexpired Leases

Claims created by the rejection of Executory Contracts and unexpired leases pursuant to this Plan, or the expiration or termination of any Executory Contract or unexpired lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Debtor no later than thirty (30) days after service of notice of entry of the Confirmation Order by the Bankruptcy Court, which notice shall set forth the deadline to file such Claims.  Any Claims arising from the rejection of an Executory Contract or unexpired lease pursuant to Section XII.A, for which proofs of claim are not timely filed within that time period, may be objected to and disallowed as late-filed claims.  Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Class 5 General Unsecured Claims and shall be subject to the provisions of this Plan; provided, however, that any such Claims related to and asserted by a Creditor asserting a Class 3 Claim shall be treated in the same way as Class 3 Claims and any such Claims related to and asserted by a Creditor asserting a Class 8 Claim shall be treated as Class 8 Claims.

### XIII.  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the Effective Date that must be satisfied or waived (as provided below):

a.   The Confirmation Order, which shall be in a form satisfactory to the Debtor in its sole and absolute discretion, has become a Final Order;

b.   The Confirmation Order shall be in full force and effect;

c.   The Liquidating Trust Agreement is fully executed and the Liquidating Trust is formed;

d.   All actions, agreements, instruments, or other documents necessary to implement the terms and conditions of the Plan are effected or executed and delivered;

e.   The Liquidating Trust Assets have been transferred to and/or vested in the Liquidating Trust; and

f.   The Debtor shall be in full compliance with the Plan Loan and all Plan Loan-related documents, including the Budget provided in the Term Sheet.

Notwithstanding the foregoing, with the Lender's written consent, which consent shall not be unreasonably withheld, the Debtor may waive the occurrence of any condition precedent to the Effective Date. Any such written waiver of a condition precedent set forth in this section may be affected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate this Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## XIV.   EXCULPATION, INJUNCTION AND RELATED PROVISIONS

### A.   Exculpation

**Neither the Debtor nor any of its post-petition officers, directors, employees, or professionals (collectively, "Exculpation Parties") shall have any liability to any entity for any and all claims, causes of action and any other debts, obligations, rights, suits, damages, actions, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, in law or in equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or any other occurrence or circumstances taking place or arising from and after the Petition Date and prior to the Effective Date related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any Holder of a Claim or other entity would have been legally entitled to assert for or on behalf of the Debtor or the Estate and further including those in any way related to the Chapter 11 Case, Liquidating Trust Agreement or this Plan, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other**

post-petition act taken or omitted to be taken in connection with the Debtor; **provided, however**, the foregoing provisions of this section shall have no effect on the liability of any entity that arises from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; and **provided further**, that nothing contained in this section shall be deemed or construed as a release or exculpation by the Debtor, the Liquidating Trust or World Trade of any Cause of Action or Avoidance Action against the Defendants or any third party arising out of or relating to the Litigation or the subject matter of the Litigation or, in the case of an Avoidance Action, otherwise.

**B.**    **Injunction**

**1.**    **Injunction Related to Confirmation**

Except as otherwise expressly provided in the Plan, Confirmation Order, or separate order of the Court, all Persons who have held, hold, or may hold Claims against the Estate, the assets of the Estate, the Liquidating Trust Assets, or the Liquidating Trust are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Estate, the assets of the Estate, the Liquidating Trust or the Liquidating Trust Assets (including any Claim that may be derivative of any Claim the Estate or the Liquidating Trust may have), (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or other action against the Estate, the assets of the Estate, the Liquidating Trust or the Liquidating Trust Assets on account of any such Claim, (iii) creating, perfecting, or enforcing any Lien or asserting control of any kind against the Estate, the assets of the Estate, the Liquidating Trust or the Liquidating Trust Assets on account of any such Claim, and (iv) except as specifically permitted in the Plan, asserting any right of set off or subrogation of any kind against any obligation due to the Estate or the Liquidating Trust, or against the assets of the Estate or the Liquidating Trust Assets, on account of any such Claim. Such injunctions shall extend to successors of the Liquidating Trust and its respective properties and interests in property.

**2.**    **Injunction Against Interference with Plan**

Upon the entry of the Confirmation Order, all Holders of Claims and other parties-in-interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**C.**    **Debtor Release**

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, the Debtor, on its own behalf and as a representative of its bankruptcy estate, to the fullest extent permitted under applicable law, shall, and shall be deemed to, completely and forever release, waive, void, and extinguish unconditionally, the Lender and all of its officers, directors, employees, advisors, members, professionals, independent contractors, or agents (including, without limitation,

Richard E. Perlman, James K. Price, William A. Shutzer, Edward Matthews, Barry M. Salzman, Reinaldo Pacual, and Russell Holcombe) (except to the extent any of the same are parties adverse to the Debtor in any Cause of Action as of the Confirmation hearing date) (collectively, "<u>Released Parties</u>") and each and all of the Released Parties, of and from any and all Claims, causes of action, interests, obligations, suits, judgments, damages, debts, rights, remedies, set offs, and liabilities of any nature whatsoever, whether derivative of a Cause of Action, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, tort, contract, or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, occurrence, or other circumstance, whether direct or derivative, taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to the Debtor or its operations, its assets, the bankruptcy estate, or the Chapter 11 Case, that may be asserted by or on behalf of the Debtor or its bankruptcy estate, against any of the Released Parties; <u>provided</u>, <u>however</u>, that nothing in this section shall operate as a release, waiver or discharge of any Causes of Action or liabilities arising out of gross negligence, willful misconduct, fraud, or criminal acts of any such Released Party as determined by a Final Order; and <u>provided</u> <u>further</u>, that nothing contained in this section shall be deemed or construed as a release or exculpation by the Debtor, the Liquidating Trust or World Trade of any Cause of Action against the Defendants or any third party arising out of or relating to the Litigation or the subject matter of the Litigation.

**D.**     <u>**Preservation of SEC Claims**</u>

Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan: (i) releases or discharges any person or entity, except the Estate, the assets of the Estate, Liquidating Trust, or Liquidating Trust Assets, from any claim or cause of action of the SEC; or (ii) enjoins, limits, impairs, or delays the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any person or entity in any forum.

## XV.    NO DISCHARGE OF DEBTOR

In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## XVI.    GENERAL PROVISIONS

**A.**     <u>**Title to Assets**</u>

Except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the Estate in the Liquidating Trust, and (ii) after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims of Creditors and Equity Interest Holders.

## B.  **Binding Effect**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors and parties-in-interest, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

## C.  **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## D.  **Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain exclusive jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expense Claims; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of Executory Contracts or unexpired leases, and (v) to adjudicate any Causes of Action and Avoidance Actions which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action; provided, however, that nothing contained herein shall be deemed or construed to affect the jurisdiction of the State Court to determine the Litigation or the jurisdiction for determining liability in connection with the SEC Investigation or the SEC Claim.

## E.  **Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## F.  **Modification of Plan**

Subject to the limitations contained in this Plan: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, subject to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019(a), to amend or modify this Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129 of the Bankruptcy Code; and (2) after the entry of the Confirmation Order, the Liquidating Trust may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, and Bankruptcy Rule 3019(b).

## G.  **Final Decree**

Once the Estate has been fully administered, as provided in Rule 3022 of the Bankruptcy Rules, the Liquidating Trustee, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## H. Provisions Governing Distributions

### 1. Delivery of Distributions

Unless otherwise provided in the Plan, all Distributions to any Holder of an Allowed Claim will be made to the Holder of each Allowed Claim at the address of such Holder as listed in the Schedules, or on the books and records of the Debtor or their agents, unless the Debtor or Liquidating Trust have been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such Holder that provides for an address for such Holder different from the address reflected in the Schedules or in the Debtors' books and records.

### 2. Unclaimed Distributions

A Distribution that is not claimed by a Holder of an Allowed Claim on or before 90 days from the date the Debtor or Liquidating Trustee, as applicable, makes such Distribution shall be deemed an "unclaimed distributions." Unclaimed distributions shall revert to the Liquidating Trustee.

### 3. Minimum Distributions

No payment of Cash less than $50 shall be made by the Debtor or Liquidating Trustee, and any payment required to be made hereunder that would total less than $50 shall be deemed waived.

## I. Revocation or Withdrawal of Plan

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Debtor takes such action, the Plan shall be deemed null and void.

## J. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Delaware shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

## K. Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

**L.**     **Successors and Assigns**

All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

**M.**     **Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

## XVII.  RISKS AND OTHER CONSIDERATIONS

**A.**     **Alternatives to Confirmation and Consummation of a Plan**

    **1.**     **Alternate Plan**

If the Plan is not confirmed, the Debtor or any other party in interest (subject to the Debtor's exclusive right to file and seek confirmation of a plan) could attempt to formulate and propose a different plan. Such a plan likely would result in additional costs, including, among other things, additional professional fees, all of which would likely constitute Administrative Expense Claims (subject to allowance by the Bankruptcy Court). The Plan Proponent believes that the Plan provides for an orderly and efficient liquidation and preservation of the Debtor's remaining assets and enables Creditors to realize the best return under the circumstances.

    **2.**     **Chapter 7 Liquidation or Dismissal**

If a plan pursuant to Chapter 11 is not confirmed by the Bankruptcy Court, the Chapter 11 Case could be dismissed or converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. The Plan Proponent believes that liquidation under Chapter 7 of the Bankruptcy Code of the Debtor's remaining assets would result in an extremely substantial reduction in the value that may be realized by Holders of Claims as compared to Distributions contemplated under the Plan. This is so because a Chapter 7 liquidation would require the appointment of a trustee, unfamiliar with the Litigation and the Debtor's other assets and the events that transpired during and prior to the Chapter 11 Case, and which would require substantial additional expenses (including the costs associated with the Trustee's retention of attorneys and other professionals) and would delay the orderly liquidation of the Estate's assets, thereby lowering recoveries to holders of Claims. Consequently, the Debtor believes that Confirmation of the Plan will provide a substantially greater return to holders of Claims than would liquidation under Chapter 7 of the Bankruptcy Code. A copy of the Plan Proponent's liquidation analysis is attached to this Plan as **Exhibit B**.

## B.    Tax Consequences of the Plan

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

The following is a summary of certain United States ("**U.S.**") federal income tax consequences of the Plan for certain Holders of Allowed Claims.  It does not address the U.S. federal income tax consequences to Holders of Claims not entitled to vote on the Plan.  This summary is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), Treasury Regulations thereunder ("**Treasury Regulations**"), and administrative and judicial interpretations, all as in effect on the date hereof (collectively, "**Applicable U.S. Tax Law**").  Changes in the rules or new interpretations of the rules may have retroactive effect and could significantly affect the U.S. federal income tax consequences described below.  No opinion of counsel has been obtained and the Debtor does not intend to seek a ruling from the Internal Revenue Service ("**IRS**") as to any of the tax consequences of the Plan discussed below.  The discussion below is not binding upon the IRS or the courts.  There can be no assurance that the IRS will not challenge one or more of the U.S. federal income tax consequences of the Plan described below.

This summary does not address non-U.S. state, local or non-income tax consequences of the Plan (including such consequences with respect to the Debtor).  This summary does not address non-U.S., state, local or non-income tax consequences of the Plan (including such consequences with respect to the Debtor).  This summary does not apply to Holders of a Claim that are not United States persons, as such term is defined in the Tax Code ("**Non-U.S. Holders**"), nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a Holder in light of its individual circumstances or to a Holder that may be subject to special tax rules (such as persons who are related to the Debtor within the meaning of the Tax Code, persons liable for alternative minimum tax, U.S. Holders within the meaning of the Tax Code, persons liable for alternative minimum tax, U.S. Holders whose functional currency is not the U.S. dollar, U.S. expatriates, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax exempt organizations, controlled foreign corporations, passive foreign investment companies, partnerships (or other entities treated as partnerships or other pass-through entities), beneficial owners of partnerships (or other entities treated as partnerships or other pass-through entities), subchapter S corporations, persons who hold Claims or who will hold any consideration received pursuant to the Plan as part of a straddle, hedge, conversion transaction, or other integrated investment, persons using a mark-to-market method of accounting, and Holders of Claims who are themselves in bankruptcy).  Furthermore, this summary assumes that a Holder of a Claim holds only Claims in a single Class and holds a Claim only as a "capital asset" (within the meaning of Section 1221 of the Tax Code).  This summary also assumes that Claims will be treated in accordance with their form for U.S. federal income tax purposes.  The U.S. federal income tax consequences of the implementation of the Plan to the Debtor and Holders of Claims described below also may vary depending on the nature of any restructuring transactions that the Debtor engaged in.

For purposes of this discussion, a "**U.S. Holder**" is a Holder of a Claim that is: (1) an individual citizen or resident of the United States for U.S. federal income tax purposes; (2) a

corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration of one or more United States persons (within the meaning of Section 7701(a)(3) of the Tax Code) have authority to control all substantial decision of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person. For purposes of this discussion, a "**Non-U.S. Holder**" is any Holder of a Claim that is neither a U.S. Holder nor a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes.

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner and the entity. Partners (or other entities treated as partnership or other pass-through entities) that are Holders of Claims should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. ALL HOLDERS OF ALLOWED CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

1. **Certain U.S. Federal Income Tax Consequences to Holders of General Unsecured Claims**

Because Holders of General Unsecured Claims are expected to receive nothing but Cash on account of their Claims, such Holders will be treated as receiving their distribution under the Plan in taxable exchange under Section 1001 of the Tax Code. Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest (or OID), a U.S. Holder of such a Claim would recognize gain or loss equal to the difference between (a) the sum of the cash and the fair market value (or issue price, in the case of debt instruments) of the consideration received and (b) such U.S. Holder's adjusted basis in such Claim. See discussion below regarding the extent to which any consideration should be treated as attributable to accrued interest (or IOD).

i. **Disputed Ownership Fund Treatment**

Certain proceeds from the disposition of the Debtor's assets may be deposited into an account pending the resolution of Disputed Claims. The Debtor intends that such assets will be subject to disputed ownership fund treatment under Section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account.

Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). To the extent property is not distributed to U.S. Holders of applicable Claims on the Effective Date but, instead, is transferred to any such account, although not free from doubt, U.S. Holders should not recognize any gain or loss on the date that the property is so transferred. Instead, gain or loss should be recognized when and to the extent property is actually distributed to such U.S. Holders.

To the extent that a U.S. Holder receives Distributions with respect to a Claim subsequent to the Effective Date, such U.S. Holder may recognize additional gain (if such U.S. Holder is in a gain position), and a portion of such distribution may be treated as imputed interest income. In addition, it is possible that the recognition of any loss realized by a U.S. Holder may be differed until all payments have been made out of any such account. U.S. Holders are urged to consult their tax advisors regarding the possible application (and the ability to elect out) of the "installment method" of reporting any gain that may be recognized by such U.S. Holder in respect of their Claims due to the receipt of property in a taxable year subsequent to the taxable year in which the Effective Date occurs. The discussion herein assumes that the installment method does not apply.

### ii.      Accrued Interest and OID

A portion of the consideration received by Holders of Allowed Claims may be attributable to accrued interest or OID on such Claims. Such amounts should be taxable to that U.S. Holder as interest income if such accrued interest or OID has not been previously included in the Holder's gross income for U.S. federal income tax purposes. Conversely, U.S. Holders of Claims may be able to recognize a deductible loss to the extent any accrued interest or OID on the Claims was previously included in the U.S. Holder's gross income but was not paid in full by the Debtor. If the fair value of the consideration is not sufficient to fully satisfy all principal and interest or OID on Allowed Claims, the extent to which such consideration will be attributable to accrued interest or OID is unclear. Under the Plan, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest or OID that accrued on such Claims, if any. Certain legislative history indicates that an allocation of consideration as between principal and interest provided in a chapter 11 plan is binding for U.S. federal income tax purposes, while certain Treasury Regulations generally treat payments as allocated first to any accrued but unpaid interest or OID and then as a payment of principal. The IRS could take the position that the consideration received by the U.S. Holder should be allocated in some way other than as provided in the Plan.

### iii.      Market Discount

Under the "market discount" provisions of Sections 1276 through 1278 of the Tax Code, some or all of any gain realized by a U.S. Holder of a Claim who exchanges the Claim for an amount may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on the debt instruments constituting the exchanged Claim. In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other

than on original issue and if its U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with OID, its adjusted issue price, in each case, by at least a *de minimis* amount (equal to 0.25 percent of the sum of all remaining payments to be made on a the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity.

Any gain recognized by a U.S. Holder on the taxable disposition of Allowed Claims (determined as described above) that were acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while the Allowed Claims were considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).

### iv. Medicare Tax on Net Investment Income

Certain U.S. Holders that are individuals, estates or trusts are required to pay an additional 3.8% tax on, among other things, interest, dividends and gains from the sale or other disposition of capital assets. U.S. Holders that are individuals, estate or trusts should consult their tax advisors regarding the effect, if any, of this tax provision on their ownership and disposition of consideration received pursuant to the Plan.

**THE UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF UNITED STATES FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER OF A CLAIM IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

### XVIII. RECOMMENDATION AND CONCLUSION

The Plan Proponent strongly believes that the Plan is in the best interests of the Estate and urges the Holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

Dated: October 30, 2022  
Wilmington, Delaware

EXWORKS CAPITAL, LLC

*/s/ Thomas Pratt*  
Name: Thomas Pratt  
Title: Independent Director

# **EXHIBIT A**

Demonstrative Litigation Proceeds Waterfall

**Demonstrative Litigation Proceeds Waterfall**

| ASSUMPTIONS | | | | |
|---|---|---|---|---|
| Lending Fee | $ | 325,000 | Unpaid UST/Bankruptcy Court Fees | $ | 5,000 |
| Loan - Litigation Expenses | $ | 1,000,000 | Unpaid Miscellaneous Litigation Costs (1) | $ | 300,000 |
| Loan - Plan Expenses | $ | 1,275,000 | King & Spalding At Risk Fees - Pre-Petition Fees | $ | 1,125,000 |
| Interest Rate - Plan Expenses | | 35% | King & Spalding At Risk Fees - Discovery Cap | $ | 1,000,000 |
| | | | Time - Months | | 10 |

| | | Litigation Proceeds | | |
|---|---|---|---|---|
| | $ 15,000,000 | $ 25,000,000 | $ 50,000,000 | $ 75,000,000 |
| Unpaid UST/Bankrutcy Court Fees | 5,000 | 5,000 | 5,000 | 5,000 |
| Unpaid Litigation Costs (1) | 300,000 | 300,000 | 300,000 | 300,000 |
| King & Spalding At Risk - Pre-Petition Fees | 1,125,000 | 1,125,000 | 1,125,000 | 1,125,000 |
| King & Spalding At Risk - Discovery Cap | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| King & Spalding At Risk Return (2x/3x) (2) | 4,250,000 | 6,375,000 | 6,375,000 | 6,375,000 |
| Lending Fee | 325,000 | 325,000 | 325,000 | 325,000 |
| Loan - Plan Expenses | 1,275,000 | 1,275,000 | 1,275,000 | 1,275,000 |
| Interest - Plan Expenses | 371,875 | 371,875 | 371,875 | 371,875 |
| Loan - Litigation Expenses | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| Return - Litigation Expenses (2.5x/3.5x) (3) | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 |
| **Net to Creditors** | $ 2,848,125 | $ 10,723,125 | $ 35,723,125 | $ 60,723,125 |

(1) E.g., Liquidating Trustee Fees and Expenses, K2 Litigation Support Fees.
(2) King & Spalding will receive 2x its At Risk fees for recovery greater than $10,000,000 and less than or equal to $20,000,000. King & Spalding will receive 3x its At Risk fees for recovery greater than $20,000,000. These amounts are not additive to its At Risk Fees, but in total.
(3) Lender will receive return of Loan for Litigation Expenses, plus either (i) 2.5 times the Loan for Litigation Expenses if Recovery is received within 12 months of first draw on the Loan or (ii) 3.5 times the Loan for Litigation Expenses if Recovery is received after 12 months of first draw on the Loan.

# **EXHIBIT B**

Liquidation Analysis

**ExWorks Capital, LLC**
Liquidation Analysis as of September 30, 2022 (analysis presumes conversion to Chapter 7 on or around December 31, 2022)

| Assets | | Book Value | Assumptions Low | Assumptions High | Recovery Low | Recovery High | Notes |
|---|---|---|---|---|---|---|---|
| | Cash on Hand | $ 884,741.00 | 89% | 100% | $ 787,419.49 | $ 884,741.00 | <--Book value includes funds held in escrow; low estimate contemplates escrow amount not being available |
| | Security Deposits | $ 3,942.30 | 0% | 0% | $ - | $ - | <--Rent security deposit; lessor asserts forfeiture of deposit for missed payments |
| | Prepayments | $ 3,436.00 | 0% | 24% | $ - | $ 824.64 | <--Book value includes SOLIFI prepayment (but that was applied against past due amounts so no recovery) and amounts due from John McAdams |
| | Note Receivable (Abrahams) | $ 785,000.00 | 0% | 0% | $ - | $ - | <--Case against Mr. Abrahams will be heavily litigated and estate would lack funds to pursue; assumes no recovery from Mr. Abrahams note receivable |
| | Accounts Receivable (Funds) | $ 8,091,732.00 | 0% | 0% | $ - | $ - | <--Receivership estate has asserted it is subject to approximately $100m in senior secured debt; claim against receivership estate is unsecured and, thus, collectibility is in doubt; in addition there is a likelihood the Receiver would dispute claim or seek set off; lack of funds to vigorously pursue claims |
| | Furniture & Fixtures | $ - | 0% | 0% | $ - | $ - | |
| | Lawsuits/Claims against Third Parties | $ 100,000,000.00 | 0% | 0% | $ - | $ - | <--In liquidation, there would be inadequate funds to pursue litigation and no certainty that substitute counsel could be found; assumes all litigation abandoned |
| | Retainer (Baker & Hostetler) | $ 200,000.00 | 100% | 100% | $ 200,000.00 | $ 200,000.00 | <--Full retainer amount |
| | Retainer (Applied Business Strategy) | $ 52,596.67 | 100% | 100% | $ 52,596.67 | $ 52,596.67 | <--$98,190 of the $125,000 retainer has been applied to date |
| | Insurance proceeds | $ 2,832,006.90 | 85% | 100% | $ 2,407,205.87 | $ 2,832,006.90 | <--Proceeds related to SEC Investigation (includes $1,857,006.90 of insurance proceeds held in escrow by King & Spalding for pre-petition work and estimated $975,000 of insurance proceeds owed for post-petition work done by King & Spalding per DIP Budget); assumes proceeds treated as property of the estate |
| **Total Assets Available for Distribution** | | | | | **$ 3,447,222.03** | **$ 3,970,169.21** | |

| | | Expenses | | | | | |
|---|---|---|---|---|---|---|---|
| **Chapter 7 Administrative Claims** | | | | | | | <--Assumes 6 month wind down, litigation abandoned |
| | Chapter 7 Trustee Fees | | | | $ 172,361.10 | $ 198,508.46 | <--Approximately 5% of value distributed |
| | Chapter 7 Non-Legal Professionals | | | | $ 60,000.00 | $ 120,000.00 | <--Estimate ($10k to $20k/month for Ch. 7 Trustee's non-legal estate professionals) |
| | Chapter 7 Legal Professionals | | | | $ 180,000.00 | $ 240,000.00 | <--Estimate ($30k to $40k/month for Ch. 7 Trustee's legal counsel) |
| | Rent | | | | $ 810.00 | $ 810.00 | <--ExWorks pays $135/month for mail services and storage |
| | Taxes | | | | $ 26,000.00 | $ 26,000.00 | <--Assumes 2023 tax preparation costs same as 2022 (~$26k/year) |
| | Wind Down Operating Costs | | | | $ 53,700.00 | $ 124,200.00 | <--Receiver is currently paying TierPoint estimated at $11,750/month--"high" end assumes ExWorks must begin paying TierPoint; ExWorks is paying Iron Mountain $200/month; assumes $8,750/month to K2 Intelligence for SEC Investigation support services. |
| | Wind Down Salary & Benefits | | | | $ 35,250.00 | $ 47,250.00 | <--$5k/mo for CFO; also includes $875/month for employer tax and ADP; $2k/month added to "high" if required to pay former IT employee |
| **Total Chapter 7 Administrative Claims** | | | | | **$ 528,121.10** | **$ 756,768.46** | |

| **Chapter 11 Expenses** | | | | | | | <--Projections through December 2022 |
|---|---|---|---|---|---|---|---|
| | Quarterly U.S. Trustee Fee (Q3 & Q4) | | | | $ 8,800.00 | $ 9,840.00 | <--"Low" assumes quarterly distribution of $1.1m through Q4; "high" assumes distribution of $1.23m through Q4 |
| | Independent Director Fees & Expenses | | | | $ 160,000.00 | $ 160,000.00 | <--Per DIP Budget |
| | Bankruptcy Professionals | | | | $ 1,850,000.00 | $ 1,850,000.00 | <--Per DIP Budget |
| | Special Litigation Counsel Fees | | | | $ 1,975,000.00 | $ 1,975,000.00 | <--Per DIP Budget (includes estimate of fees related to SEC Investigation and Cook County Litigation through December if not settled through Plan; fees related to SEC Investigation have insurance coverage) |
| | Payroll & Payroll Taxes | | | | $ 18,105.00 | $ 18,105.00 | <--Per DIP Budget (CFO + payroll taxes and fees) |
| **Total Chapter 11 Expenses** | | | | | **$ 4,011,905.00** | **$ 4,012,945.00** | |
| **Total Expenses** | | | | | **$ 4,540,026.10** | **$ 4,769,713.46** | |
| **Shortfall for General Unsecured Claims** | | | | | **$ (1,322,491.44)** | **$ (569,856.89)** | <--"Low" = low assets minus high expenses; "high" = high assets minus low expenses |

# **EXHIBIT C**

Term Sheet for DIP Loan and Plan Loan

**EXWORKS CAPITAL, LLC**

**SUMMARY OF TERMS AND CONDITIONS FOR A SENIOR SECURED
SUPERPRIORITY DEBTOR-IN-POSSESSION FINANCING AND
PLAN FUNDING COMMITMENT**

*The following describes the terms of a debtor-in-possession financing (**"DIP Loan"**) and plan funding commitment (the **"Plan Loan"**) to be provided to ExWorks Capital, LLC or its post-bankruptcy successor (**"ExWorks Capital"** or the **"Debtor"**) and World Trade Finance, LLC (**"World Trade"** and collectively with ExWorks Capital, the **"Borrowers"**) during the pendency of the Debtor's case filed under Chapter 11 (**"Chapter 11 Case"**) of the United States Bankruptcy Code (the **"Bankruptcy Code"**) in the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**).*

*The Lender's (as defined below) commitment and other obligations under this term sheet (the "**Term Sheet**") are subject to satisfaction or waiver (by the Lender in its sole discretion) of the following: (i) the preparation, execution and delivery of mutually acceptable loan documentation, which shall take the form of this Term Sheet, that certain Superpriority Debtor-in-Possession Secured Promissory Note, incorporating substantially the terms and conditions outlined in this Term Sheet, and the Budget (as defined below)(the "**DIP Loan Documents**"); (ii) the Borrower's compliance with the terms of this Term Sheet, including, without limitation, the payment in full of all fees, expenses and other amounts payable hereunder; and (iii) the other conditions set forth in this Term Sheet or referred to in <u>Appendix I</u>. Except as expressly provided in any binding written agreement the parties may enter into in the future, upon approval of the Bankruptcy Court, no past, present or future action, course of conduct, or failure to act relating to the transactions or proposals referred to in this Term Sheet or relating to the negotiation of the terms of such transactions or proposals shall give rise to or serve as the basis for any obligation or other liability on the part of the Lender.*

| | |
|---|---|
| **Borrowers** | ExWorks Capital, LLC (or its post-bankruptcy successor); and World Trade Finance, LLC |
| **Lender** | ExWorks Litigation Funding, LLC |
| **Funding Commitment and Use of Proceeds** | Borrowers commit that funding shall be used only for the following purposes, and Lender commits to providing the following funding in the total initial aggregate amount of up to $2,275,000 (the **"Initial Commitment"**), subject to the terms and conditions set forth herein and in the attached budget (the **"Budget"**): |

| | **Lender Fees and Expenses** |
| --- | --- |
| | The reasonable fees and expenses of counsel to the Lender (the **"Lender Fees"**). |
| | **DIP Loan** |
| | Lender commits to provide sufficient funding to ensure that the bankruptcy administrative expenses set forth in the attached Budget (the "**DIP Expenses**") are paid in connection with the bankruptcy case.  Debtor agrees that it shall pay such administrative expenses <u>first</u> from the Debtor's existing cash on hand and via application of any retainers held by professionals (subject to appropriate application to and approval by the Bankruptcy Court presiding over Debtor's bankruptcy case) and the independent director prior to making any draws on the DIP Loan.  Lender shall be entitled to receive 35% interest on any DIP Loan advances, which amount shall be paid in accordance with the repayment terms, and at the time, described below. |
| | **Plan Loan** |
| | Subject to the Budget, Lender commits that, if a plan of reorganization ("**Plan**") proposed by the Debtor and conforming with this Term Sheet is confirmed by the Bankruptcy Court, Lender will also provide sufficient funding, in addition to the Debtor's cash on hand at the time Debtor's Plan becomes effective, to ensure payment in full of Debtor's budgeted administrative and priority expense claims (including paying taxes, priority wage claims, United States Trustee fees, Litigation Expenses (defined below) accrued during the pendency of the Debtor's bankruptcy case but unpaid prior to the Plan effective date to the extent not paid from other sources (such as insurance), and any unpaid budgeted fees and expenses of Debtor's bankruptcy counsel for bankruptcy services) (the "**Plan Expenses**"), |

all subject to and in accordance with the attached Budget.

For the avoidance of doubt, administrative expenses accrued and paid prior to the Plan effective date shall be treated as DIP Expenses. Administrative expenses accrued but unpaid prior to the Plan effective date shall be treated as Plan Expenses. Draws on the Plan Loan for the Plan Expenses shall only be made by Debtor to the extent such amounts have not been previously paid from the Debtor's cash on hand or pursuant to draws on the DIP Loan described above. For the avoidance of doubt, Lender is not responsible to fund any amounts not set forth in the Budget.

**<u>Litigation Expenses</u>**

ExWorks Capital and World Trade are plaintiffs in the case titled *ExWorks Capital, LLC, et al. v. Abrahams, et al.*, 2020-CH-06538, currently pending in the Circuit Court of Cook County, Illinois (the "**Litigation**").

Subject to the Budget, Lender commits to (i) lend Borrowers funds to pay reasonable Litigation expenses totaling up to $1 million through the end of discovery in the Litigation (the "**Litigation Period**") and (ii) to lend the Borrowers sufficient funds to ensure that payments to King & Spalding on account of King & Spalding claims required to be paid under a confirmed Plan are made in full ((i) and (ii), the "**Initial Litigation Expenses**"), all in accordance with and subject to the Budget, the DIP Loan Documents and the Plan.

Lender and Borrowers may agree to extend the Litigation Period and/or loan amounts in addition to the Initial Litigation Expenses as necessary and as may be agreed by the parties including, without limitation, by increasing the amount to be lent to pay Litigation Expenses up to $10 million ("**Additional Litigation**

| | **Expenses**" and together with Initial Litigation Expenses, the "**Litigation Expenses**"), subject to Borrowers satisfaction of certain conditions in Lender's sole and absolute discretion. |
| --- | --- |
| | Litigation Expenses may be paid in connection with either the DIP Loan pursuant to the terms of the DIP Loan Documents or the Plan Loan pursuant to the terms of the Plan. For the avoidance of doubt, Litigation Expenses accrued and paid prior to the Plan effective date shall be treated as DIP Expenses. Litigation Expenses accrued but unpaid prior to the Plan effective date or accrued after the Plan effective date shall be treated as Plan Expenses. |
| | With respect to DIP Expenses and Plan Expenses owed to King & Spalding that may be reimbursable by the Debtor's insurance, the parties agree that King & Spalding may directly seek and obtain such reimbursement from the applicable insurance carriers, and that Debtor, World Trade and Lender shall have no claim with respect to any such insurance proceeds that either have or will be received to pay King & Spalding unless such amounts have already been paid by the Debtor; provided, however, that any such funds shall revert to the Debtor to the extent (i) they relate to fees or expenses which must be approved by the Bankruptcy Court and (ii) the Bankruptcy Court issues a final order declining to approve such fees or expenses with prejudice. |
| | The total of DIP Expenses and Plan Expenses (including the Initial Litigation Expenses and, for the avoidance of doubt, net of retainers held by Debtor's professionals and representatives, net of anticipated further reimbursements from insurance, and net of Debtor's current cash on hand totaling approximately $900,000) shall not in the aggregate exceed the amounts set forth in the |

| | |
|---|---|
| | approved Budget attached hereto without the prior express written consent of Lender. |
| **Allocation of Liability** | Borrowers shall be jointly and severally liable for repayment of any amounts that are due to Lender, including without limitation any Returns (as defined below) under the DIP Loan and the Plan Loan, solely from the proceeds of the Litigation; provided, however, that only ExWorks Capital shall be liable to repay Plan Expenses, except to the extent the Plan Expenses also benefit World Trade (for example, Litigation Expenses that are Plan Expenses), in which case an appropriate allocation of Plan Expenses which benefit both ExWorks Capital and World Trade shall be made in good faith by mutual agreement of ExWorks Capital and World Trade and subject to Bankruptcy Court approval. If the parties cannot reach agreement on an appropriate allocation, either party may raise the allocation issue with the Bankruptcy Court. |
| **Return and Repayment Terms** | Upon a recovery in the Litigation, Lender shall be entitled to be paid the following from the proceeds of the Litigation, after satisfying (i) any unpaid fees and expenses owed to the United States Trustee or the Clerk of the Bankruptcy Court, (ii) any unpaid Litigation Expenses subject to the Budget, and (iii) subject to approval of the Debtor's Plan, "at risk" fees and expenses that may be owed to King & Spalding under the Plan: (i) the Fees (as defined below), plus (ii) the principal amount of the Lender Fees, amounts advanced under the DIP Loan and amounts advanced under the Plan Loan, plus (iii) with respect to amounts advanced under the DIP Loan or the Plan Loan that are also Litigation Expenses , a return on investment equal to (a) if the Litigation is settled or the Litigation is concluded within one year after the first date the Debtor is funded under this facility, two and one-half times the Litigation Expenses; or, (b) if the Litigation is concluded later than one year after the first date the Debtor is funded under this facility, three and one-half times the |

| | |
|---|---|
| | Litigation Expenses, plus (iv) with respect to amounts advanced under the DIP Loan and Plan Loan advances that are not Litigation Expenses, interest accrued at the rate of 35% per annum ((i) – (iv) collectively, the "**Returns**"). |
| **Maturity Date** | Within ten (10) business days of acquiring Litigation Proceeds. |
| **Priority and Lien** | The Borrowers' obligations shall be: (i) secured by a first-priority lien on the Litigation and its proceeds; and (ii) Lender shall be entitled to a superpriority claim on the Litigation Proceeds, all subject to a carve out for (w) unpaid U.S. Trustee fees, (x) the total budgeted weekly professional fees accrued until the date of any default or termination of the DIP Loan or Plan Loan, (y) payment of budgeted Litigation Expenses and (z) subject to approval of the Debtor's Plan, amounts related to "at risk" fees and expenses that may be owed to King & Spalding under the Plan. |
| **Fees** | $325,000 Lending Fee, to be repaid from Litigation proceeds as described above. A further $650,000 Success Fee will be repaid from Litigation proceeds only if and to the extent General Unsecured Creditors holding allowed claims are paid in full pursuant to the Debtor's Plan. |
| **Due Diligence Contingency** | None. |
| **Non-Exclusivity and Backstop Basis** | Lender understands that Borrowers have sought and intend to continue to seek alternative financing, and, in the event Borrowers find committed financing on superior terms, they are free to accept such financing without penalty or break-up fees from Lender. For avoidance of doubt, Borrowers may prepay all or any part of the DIP Loan or Plan Loan (including Litigation Expenses) without penalty. If Borrowers refinance or otherwise repay the DIP Loan or Plan Loan (including DIP Loan or Plan Loan advances that are Litigation Expenses), Lender |

| | |
|---|---|
| | shall be entitled to receive accrued and unpaid interest at the rate of 35% per annum on the amounts advanced under the DIP Loan or Plan Loan through the date of repayment. |
| **Firm Commitment; Final Documentation** | Lender hereby makes an offer of financing to the Borrowers, and this Term Sheet and the attached Budget contain the material terms of such offer, although they may be supplemented by other definitive documentation or agreements to the extent necessary.<br><br>Lender understands that this term sheet may be presented in court as a financing commitment as part of ExWorks Capital's Chapter 11 Case, currently pending before the Bankruptcy Court, and understands that the Bankruptcy Court may order specific performance to fund the DIP Loan and the Plan Loan up to the Initial Commitment on the terms provided herein, subject to the attached Budget; provided, however, that each of these offers of DIP Loan and Plan Loan financing, respectively, are only binding if (i) agreed to by both Borrowers, and (ii) approved by the Bankruptcy Court in connection with ExWorks Capital's bankruptcy case via appropriate order(s) approving the DIP Loan, in the case of the DIP Loan, and Plan, in the case of the Plan Loan, consistent with the terms herein and the attached Budget (including the anticipated use of loan proceeds). Lender does not have the right to terminate this commitment except in accordance with the terms hereof.<br><br>Moreover, absent the prior written consent of Lender, this offer of financing is not binding if (i) Mr. Thomas Pratt, or such other independent director as may succeed Mr. Pratt, ceases to control the Debtor and non-debtor World Trade, including, without limitation, if a Chapter 7 or Chapter 11 Trustee or an Examiner with expanded authority were to be appointed by the |

| | |
|---|---|
| | Bankruptcy Court, or (ii) the Debtor's Chapter 11 Case is dismissed by the Bankruptcy Court. |
| **Releases** | In consideration of the financing committed to herein, and contemplated to be included in the Debtor's Plan, upon the Effective Date of the Debtor's Plan, Borrowers shall release any claims they may have, or that could be brought derivatively on their behalf, against Lender and Lender's equity holders providing funding to Lender to fund the financing contemplated herein (including Richard E. Perlman, James K. Price, William A. Shutzer, Edward Matthews, Barry M. Salzman, Reinaldo Pascual, and Russell Holcombe). In no event shall any of the parties who are defendants in the Litigation receive releases as part of any Plan proposed by the Debtor. |
| **Feasibility** | Richard E. Perlman, James K. Price, William A. Shutzer, Edward Matthews, Barry M. Salzman, Reinaldo Pascual, and Russell Holcombe commit to ensuring Lender has sufficient funds to satisfy the funding commitments set forth herein up to the Initial Commitment. Nothing herein prohibits them from seeking other parties to participate. Allocation of the foregoing commitment shall be at the sole and absolute discretion of the individuals described above and any additional parties that may choose to participate in the financing arrangements described herein and in the attached Budget. |
| **Termination of Commitment by Lender Regarding Litigation Expenses** | If, at any time, Lender reasonably and in good faith determines that it is insecure about Debtor's and World Trade's ability to prevail in the Litigation and recover amounts sufficient to pay the Returns, Lender shall have the right to terminate its commitment to fund Litigation Expenses; provided, however, Lender shall not have such a termination right with respect to Litigation Expenses included in the Initial Commitment. Moreover, Lender, Debtor and World Trade shall be permitted to grant Lender such other and further termination rights as may be necessary and |

| | |
|---|---|
| | appropriate with respect to Litigation Expenses upon mutual agreement of the parties. |
| **Subject to Court Approval** | Nothing in this Term Sheet shall be binding upon the Borrowers or Lender unless and until (i) ExWorks Capital is authorized to enter into such agreement as part of an order approving the DIP Loan, with respect to the DIP Loan, a confirmed Plan, with respect to the Plan Loan, or as may be otherwise approved by the Court in Debtor's Chapter 11 Case, and (ii) this Term Sheet and any necessary definitive documentation has been executed by the parties. |
| **Waivers** | The order approving the DIP Loan shall provide customary waivers of the automatic stay in connection with the Lender's enforcement of remedies upon an Event of Default (defined below). |
| **Events of Default** | The DIP Loan Documents shall contain events of default customary or appropriate in the context of the proposed DIP Loan, as otherwise required by the Lender (the **"Events of Default"**), including, without limitation: (i) the violation of any term, provision or condition in the order approving the DIP Loan; and (ii) dismissal or conversion of the Chapter 11 Case or appointment of a Chapter 11 trustee or examiner or other estate representative with expanded powers. |
| **Remedies** | Following notice of an Event of Default, if such Event of Default is not cured within five business (5) days or such other time as may be agreed, the Lender may, (i)(a) declare all obligations to be immediately due and payable, and (b) terminate the DIP Loan as to any future liability or obligation of the Lender, but without affecting any of the obligations under the DIP Loan or the liens under the DIP Loan. |
| **Indemnity** | The Borrowers shall be obligated to indemnify and hold harmless the Lender, and its officers, directors, fiduciaries, employees, agents, |

| | advisors, attorneys and representatives from and against all losses, claims, liabilities, damages, and expenses (including, without limitation, out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Loan, Plan Loan or the transactions contemplated in this Term Sheet. |
|---|---|
| **Governing Law** | The DIP Loan Documents will provide that the Borrowers will submit to the non-exclusive jurisdiction and venue of the Bankruptcy Court, or in the event that the Bankruptcy Court does not have or does not exercise jurisdiction, then in any state or federal court of competent jurisdiction in the State of Delaware; and shall waive any right to trial by jury. |
| | Delaware law shall govern the DIP Loan Documents except to the extent preempted by federal bankruptcy laws. |

**[signature page to follow]**

**THIS TERM SHEET EXECUTED AND AGREED TO BY:**

ExWorks Litigation Finance, LLC

By: _____

Its: _____Manager_____

ExWorks Capital, LLC

By: -----------------------------------------------------

Its: _____

World Trade Finance LLC

By: _____

Its: _____

**THIS TERM SHEET EXECUTED AND AGREED TO BY:**

_____

ExWorks Litigation Finance, LLC

By: _____

Its: _____


_____

ExWorks Capital, LLC

By: _____

Its: _____Independent Director_____


World Trade Finance LLC

By: _____

Its: _____

**THIS TERM SHEET EXECUTED AND AGREED TO BY:**

_____

ExWorks Litigation Finance, LLC

By:_____

Its: _____

_____

ExWorks Capital, LLC

By: _____

Its: _____

World Trade Finance LLC

By: _____

Its: _President_____

<u>Appendix I</u>

<u>Conditions to Closing</u>

**<u>Conditions to the DIP Loan</u>**

(a) The Bankruptcy Court shall have entered a final order as to the DIP Loan (and no appeal thereof shall have been filed or remain pending) which final order shall be in form and substance satisfactory in the sole discretion of the Lender and shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge.

(b) All costs, fees, expenses (including, without limitation, reasonable legal fees) and other compensation contemplated by the DIP Loan Documents and the Term Sheet to be payable shall have been paid to the extent due and the Borrowers shall have complied in all respects with all of their other obligations to the Lender.

(c) The Lender shall have received the Budget, any required periodic updates pursuant to the Budget and any variance reports, each in form and substance satisfactory to the Lender, and the Borrowers shall be in compliance with the Budget.

(d) The Lender shall be satisfied that the Borrowers have complied with all other customary closing conditions (unless such conditions are waived by the Lender). The Borrowers and the transactions contemplated by this Term Sheet shall be in compliance with all applicable laws and regulations.

(e) Execution and delivery by the Borrowers of the DIP Loan Documents evidencing the loans made and to be made under the DIP Loan.

(f) Such other conditions as are reasonably requested by the Lender shall have been satisfied by the Borrowers.

Such other conditions customary or appropriate in the context of the proposed DIP Loan as may be requested by the Lender.

**<u>Conditions to the Plan Loan</u>**:

(a) The Borrowers shall be in full compliance with the Budget and the final order approving the DIP Loan.

(b) The Plan shall be approved by the Bankruptcy Court, which Plan shall be in form and substance satisfactory in the sole discretion of the Lender.

(c) The confirmation order entered by the Bankruptcy Court shall be in form and substance satisfactory in the sole discretion of the Lender and shall be in full force and effect, and shall not (in whole or in part) have been reversed, modified, amended, stayed, vacated, appealed or subject to a stay pending appeal or otherwise challenged or subject to any challenge.

**ExWorks Capital LLC**
**13 Week Projection**
**As of September 20, 2022**
**Assumes Plan Confirmation Week of 12/16/22**

| Week Ended: | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash (Unrestricted Only) | 884,741 | 878,506 | 300,992 | 177,466 | 155,941 | 140,706 | 66,956 | 57,706 | 36,456 | 27,231 | 47,196 | 36,946 | 15,696 | 884,741 |
| Cash inflows | - | 200,000 | - | - | - | - | - | - | - | 100,000 | - | - | 3,150,000 | 3,450,000 |
| **Cash outflows** | | | | | | | | | | | | | | |
| Payroll | 6,035 | 40,000 | - | - | 6,035 | 40,000 | - | - | - | 46,035 | - | - | 40,000 | 178,105 |
| General & Admin | 200 | 6,040 | 123,026 | 21,525 | 9,200 | 8,750 | 8,750 | 21,250 | 9,225 | 9,000 | 9,750 | 21,250 | 9,025 | 256,991 |
| Professional Fees[1][2] | - | 731,474 | - | 500 | - | 25,000 | - | 500 | - | 25,000 | - | 500 | 3,138,569 | 3,920,043 |
| Other | - | - | - | - | - | - | 500 | - | - | - | - | - | - | 1,500 |
| | 6,235 | 777,514 | 123,026 | 21,525 | 15,235 | 73,750 | 9,250 | 21,250 | 9,225 | 80,035 | 10,250 | 21,250 | 3,187,594 | 4,356,639 |
| Net cash flow | (6,235) | (577,514) | (123,526) | (21,525) | (15,235) | (73,750) | (9,250) | (21,250) | (9,225) | 19,965 | (10,250) | (21,250) | (37,594) | (906,639) |
| Ending cash | 878,506 | 300,992 | 177,466 | 155,941 | 140,706 | 66,956 | 57,706 | 36,456 | 27,231 | 47,196 | 36,946 | 15,696 | (21,898) | (21,898) |

[1] Cash outflows shown represent cash payments to be made
[2] Payment 12/16/22 includes accrual of professional expenses shown below

**DETAIL ACTIVITY (CASH)**

**Cash inflows**

| | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP financing & other advances | - | - | - | - | - | - | - | - | - | 100,000 | - | - | 2,175,000 | 2,275,000 |
| Baker & Hostetler (Pre-Petition Retainer) | - | 200,000 | - | - | - | - | - | - | - | - | - | - | - | 200,000 |
| Misc cash receipts (Insurance Payments)[3] | - | - | - | - | - | - | - | - | - | - | - | - | 975,000 | 975,000 |
| Total cash inflows | - | 200,000 | - | - | - | - | - | - | - | 100,000 | - | - | 3,150,000 | 3,450,000 |

[3] Includes insurance proceeds for SEC/Defamation Matters

**Payroll**

| | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Recurring payroll (Harrington) | 5,000 | - | - | - | 5,000 | - | - | - | - | 5,000 | - | - | - | 15,000 |
| Independent Director Fees/Expenses | - | 40,000 | - | - | - | 40,000 | - | - | - | 40,000 | - | - | 40,000 | 160,000 |
| Employer taxes /fees | 635 | - | - | - | 635 | - | - | - | - | 635 | - | - | - | 1,905 |
| Other | 400 | - | - | - | 400 | - | - | - | - | 400 | - | - | - | 1,200 |
| Total payroll | 6,035 | 40,000 | - | - | 6,035 | 40,000 | - | - | - | 46,035 | - | - | 40,000 | 178,105 |

**General & administrative**

| | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bank service charges | - | - | - | 500 | - | - | - | 500 | - | - | - | 500 | - | 1,500 |
| CSC fees | - | - | - | - | - | - | - | - | - | - | 1,000 | - | - | 1,000 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Rent | - | - | - | 275 | - | - | - | - | 275 | - | - | - | 275 | 825 |
| Iron Mountain | 200 | - | - | - | 200 | - | - | - | 200 | - | - | - | - | 600 |
| Taxes | - | 5,790 | - | - | - | - | - | - | - | - | - | - | - | 5,790 |
| K2 Intelligence | - | - | 123,026 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 8,750 | 210,526 |
| IT/Litigation Support | - | - | - | 12,000 | - | - | - | - | 12,000 | - | - | 12,000 | - | 36,000 |
| Other | - | 250 | - | - | 250 | - | - | - | - | 250 | - | - | - | 750 |
| | 200 | 6,040 | 123,026 | 21,525 | 9,200 | 8,750 | 8,750 | 21,250 | 9,225 | 9,000 | 9,750 | 21,250 | 9,025 | 256,991 |

**DETAIL ACTIVITY (ACCRUAL)**

**Professional Fees**

| | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker & Hostetler | 80,827 | 706,474 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 80,827 | 254,472 | 1,850,043 |
| King & Spalding (Litigation) | 400,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 1,000,000 |
| King & Spalding (SEC/Defamation)[4] | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 975,000 |
| Lender Fees | - | 25,000 | - | - | - | - | - | - | - | 25,000 | - | - | 20,000 | 95,000 |
| Total professional | 555,827 | 856,474 | 205,827 | 205,827 | 205,827 | 230,827 | 205,827 | 205,827 | 205,827 | 230,827 | 205,827 | 205,827 | 399,472 | 3,920,043 |

[4] Expected to be paid by insurance

**PLAN EXPENSES (NOT BEING REQUESTED VIA DIP)**

| | 1 09/23/22 | 2 09/30/22 | 3 10/07/22 | 4 10/14/22 | 5 10/21/22 | 6 10/28/22 | 7 11/04/22 | 8 11/11/22 | 9 11/18/22 | 10 11/25/22 | 11 12/02/22 | 12 12/09/22 | 13 12/16/22 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| US Trustee Fees Payment | - | - | - | - | - | - | - | - | - | - | - | - | 40,000 | 40,000 |
| Priority Tax Claim Payment | - | - | - | - | - | - | - | - | - | - | - | - | 37,427 | 37,427 |
| Priority Non-Tax Claim Payment | - | - | - | - | - | - | - | - | - | - | - | - | 95,500 | 95,500 |
| Employee Severance Payment | - | - | - | - | - | - | - | - | - | - | - | - | 318,611 | 318,611 |
| King & Spalding Cure Payment | - | - | - | - | - | - | - | - | - | - | - | - | 500,000 | 500,000 |
| Total plan expenses | - | - | - | - | - | - | - | - | - | - | - | - | 991,538 | 991,538 |

## **EXHIBIT D**

Schedule of Allowed Claims for Voting Purposes Only

## IN RE EXWORKS CAPITAL, LLC, Case No. 22-10213-BLS
## CLAIM CLASSIFICATION SCHEDULE

| Claim No. | Claimaint | Claim Amount Allowed For Voting Purposes Only | Plan Classification |
|---|---|---|---|
| 1 | Internal Revenue Service | $52,484.56 | Priority Tax Claim |
| 2 | Abrams & Bayliss LLP | $113,903.71 | Class 5 |
| 3 | KLDiscovery Ontrack, LLC | $37,900.74 | Class 5 |
| 4 | Gould & Ratner LLP (withdrawn) | Withdrawn | Withdrawn |
| 5 | Hartford Fire Insurance Company | $1.00 | Class 5 |
| 6 | Franchise Tax Board | $800.00 | Priority Tax Claim |
| 7 | Randolph Abrahams | $2,296,027.23 | Class 3 |
| 8 | RedRidge Finance Group, LLC | $1,341,500.79 | Class 3 |
| 9 | CIBC Bank USA | $735,948.49 | Class 5 |
| 10 | CIBC Bank USA, as Admin Agent | $1.00 | Class 5 |
| 11 | James D. Decker | $125,338.25 | Class 5 |
| 12 | James D. Decker | $1.00 | Class 8 |
| 13 | Terry M. Keating | $125,338.25 | Class 5 |
| 14 | Terry M. Keating | $1.00 | Class 8 |
| 15 | Wright Close & Barger, LLP | $45,189.64 | Class 5 |
| 16 | James Harrington | $82,743.00 | Class 2 |
| 17 | Donald Hutchison | $1.00 | Class 8 |
| 18 | Hutchison Creative Capital | $270,000.00 | Class 5 |
| 19 | James K. Price | $1.00 | Class 8 |
| 20 | TierPoint, LLC | $15,445.94 | Class 5 |
| 21 | CR3 Partners, LLC | $62,755.00 | Class 5 |
| 22 | Rey Pascual | $1.00 | Class 8 |
| 23 | Pascual LLC | $176,169.00 | Class 5 |
| 24 | King & Spalding LLP | $4,124,556.21 | Class 4 |
| 25 | William A. Shutzer | $1.00 | Class 8 |
| 26 | Richard E Perlman | $1.00 | Class 8 |
| 27 | PKF Mueller (withdrawn) | Withdrawn | Withdrawn |
| 28 | Walder Wyss Ltd. | $115,329.00 | Class 5 |
| 29 | ExWorks Capital Fund I, L.P. | $14,052,614.84 | Class 6 |
| 30 | TrdFin Fund Holdings LLC | $1.00 | Class 5 |
| 31 | Luke LaHaie (amended) | $1,534,551.31 | Class 3 |
| 32 | Andrew Hall | $792,542.38 | Class 3 |
| 33 | AMEX TRS Co., Inc. | $2,802.02 | Class 5 |
| 34 | Corporation Service Company | $485.00 | Class 5 |
| 35 | SEC | $1.00 | Class 7 |
| | | | |
| | | | |
| **Scheduled Claims Not Listed As Contingent, Disputed or Unliquidated / No Claim Filed** | | | |
| | | | |
| | Doug Sherlag | $90,492.00 | Class 2 |
| | Franz Gildemeister | $76,223.00 | Class 2 |
| | International Decision Systems, Inc. | $6,166.44 | Class 5 |
| | Meredith Stopka | $34,079.00 | Class 2 |
| | K2 Intelligence, LLC | $95,554.79 | Class 5 |
| | Michelle Sadkowy | $57,744.00 | Class 2 |
| | Sandra Herrera | $44,880.00 | Class 2 |
| | Mueller Financial Service | $2,186.36 | Class 5 |
| | Northern Trust Company | $93,000.00 | Class 5 |
| | World Trade Finance, LLC | $2,282.00 | Class 5 |