## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ExWorks Capital, LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 22-10213 (BLS)<br><br>Obj. Deadline: November 30, 2023 at 4:00 p.m. (ET) |

**MOTION OF EXWORKS CAPITAL FUND I, L.P. AND STEPHEN L. KUNKEL,
SOLELY IN HIS CAPACITY AS COURT APPOINTED RECEIVER
TO EXWORKS CAPITAL FUND I, L.P., FOR ENTRY OF AN ORDER
DETERMINING THE SCOPE AND/OR CLARIFYING PROVISIONS OF
THE PLAN IN AID OF STATE COURT PROCEEDINGS**

ExWorks Capital Fund I, L.P. (the "ExWorks Fund"), and Stephen L. Kunkel, not individually but solely as court appointed receiver (the "Receiver") for the ExWorks Fund, by and through undersigned counsel for the Receiver, hereby file this motion (the "Motion") for a determination of the scope and/or for clarification of the *Combined Disclosure Statement and Third Amended Chapter 11 Plan of Liquidation of ExWorks Capital, LLC* (the "Plan") [D.I. 236] and this Court's *Findings of Fact, Conclusions of Law, and Order Approving and Confirming the Combined Disclosure Statement and Third Amended Chapter 11 Plan of Liquidation of ExWorks Capital, LLC* (the "Confirmation Order") [D.I. 244] in aid of state court proceedings pending in the Circuit Court of Cook County Illinois, Chancery Division (the "State Court") regarding the liability of World Trade Finance, LLC ("World Trade") and other defendants under the Investment Agreement and the Prepetition Agreement Documents (as defined herein) (the "State Court Proceedings").[2]  In support of the Motion, the Receiver respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax *identification* number are 9876. The Debtor's address is 1415 West 22nd Street, Tower Floor, Oak Brook, IL 60523.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan and Confirmation Order, as applicable.

1

**JURISDICTION & VENUE**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 & 1409.

**BACKGROUND**

3. On March 14, 2022 (the "Petition Date"), ExWorks Capital, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or this "Court").

**A.    The Agreements and Loans**

4. The Debtor and ExWorks Fund are parties to a Limited Partnership Agreement (the "Limited Partnership Agreement"), pursuant to which the Debtor provides services to ExWorks Fund.

5. On or about April 30, 2015, ExWorks Fund, World Trade (a non-debtor), and the Debtor entered into an Investment Agreement ("Investment Agreement"), pursuant to which ExWorks Fund provided $3,105,483.00 to the Debtor to fund the Debtor's acquisition of World Trade. In addition, ExWorks Fund provided a $5,000,000.00 guaranty to World Trade's senior secured revolving credit facility lender, California Bank & Trust, a California banking corporation. In exchange, Debtor and World Trade agreed to pay ExWorks Fund all revenue generated by World Trade's current and future loans (as further defined in the Investment Agreement, the "Investment Income"). A true and correct copy of the Investment Agreement is attached hereto as **Exhibit A**, and is incorporated by reference.

6. The Investment Agreement further provided that upon notice by ExWorks Fund that it will no longer fund or guarantee new loans, Debtor and World Trade will "compensate [ExWorks Fund] for the deemed value to [ExWorks Funds] of the SBA License [as defined in the Investment Agreement]." *See* Investment Agreement, ¶ 5.

7. Since the Debtor's acquisition of World Trade (and the SBA License), ExWorks Fund has provided additional net funding to Debtor and World Trade to fund additional Loans (as defined in the Investment Agreement).

8. Pursuant to the Investment Agreement, the Debtor and World Trade are indebted to ExWorks Fund for accrued Investment Income, which amount is at least $5,149,753.58.

9. In addition, the Debtor and World Trade are indebted to ExWorks for additional net funding provided by ExWorks Fund to fund additional Loans, which amount is at least $5,797,378.65.

10. Lastly, the Debtor and World Trade are indebted to ExWorks Fund for the deemed value of the SBA License, which amount is at least $3,105,482.61.

11. As of the Petition Date, both the Debtor and World Trade were indebted and liable to ExWorks Fund under the Investment Agreement and all documents, instruments, and agreements related to or entered into in connection with the foregoing (collectively, the "Prepetition Agreement Documents") in the principal amount of at least $14,052,614.84.

12. On May 13, 2022, ExWorks Fund filed a claim (the "Proof of Claim") against the Debtor in the amount of $14,052,614.84 for amounts owed under the Prepetition Agreement Documents. *See* Proof of Claim No. 29.

**B.     The Receiver**

13.     Prior to the Petition Date, on December 21, 2021, Judge Allen P. Walker of the State Court entered a Receivership Order (the "Receivership Order") appointing the Receiver over the Debtor and ExWorks Fund, and other affiliated entities (together, the "Receivership Entities").[3] The Receivership Order, among other relief, granted the Receiver broad powers to control, operate, manage, administer, wind-down, and liquidate the Receivership Entities. The Receivership Order also granted possession, custody, control of all of the Receivership Entities' assets, including all legal and equitable claims. A true and correct copy of the Receivership Order is attached hereto as **Exhibit B**, and is incorporated by reference.

**C.     The Plan and Confirmation**

14.     On October 5, 2022, the Debtor filed the *Motion of the Debtor for an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Amended Plan Confirmation and Deadlines Related Thereto; (III) Temporarily Allowing Certain Claims for Voting Purposes Only; (IV) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (V) Granting Related Relief* [D.I. 183] (the "Solicitation Motion").

15.     On October 31, 2022, this Court granted the Solicitation Motion and conditionally approved the Combined Disclosure Statement and Plan [D.I. 200].

16.     On January 4, 2023, the Bankruptcy Court entered the Confirmation Order, confirming the Plan, as amended.

17.     The Plan became effective on January 26, 2023 (the "Effective Date") [D.I. 246].

---

[3] Although both proceedings are in the Circuit Court of Cook County, Illinois, the State Court Proceedings were not brought in the same action as the state court action that appointed the Receiver. The State Court Proceedings are pending before a different judge, Judge Michael T. Mullen.

18.     The Plan provides, *inter alia*, for the preservation of claims of the Receiver. *See* Plan at § XIV(E). Specifically, the Plan states:

> Notwithstanding any provision herein to the contrary or an abstention from voting on the Plan, no provision of the Plan, or any order confirming the Plan: (i) releases or discharges any person or entity, except the Estate, the assets of the Estate, Liquidating Trust, or Liquidating Trust Assets, from any claims or cause of action of the Receiver; or (ii) except as provided in subsection (i) of this paragraph, enjoins, limits, impairs, or delays the Receiver from commencing or continuing any claims, causes of action, proceedings, or investigations against any person or entity in any forum.

*Id.*

19.     Further, the Plan defines "Intercompany Receiver Claim" as "[a] claim asserted by the receiver for the Funds for intercompany amounts allegedly owed to the Funds by the Debtor and World Trade, **jointly and severally**." *See id.* at § II(A)(55) (emphasis supplied). Though expressly defined in the Plan [*Id.* at § II(A)(87)], World Trade is **not** a debtor entity and is **not** included in the Plan's definition of a "Released Party." The preservation of Intercompany Receiver Claims does not except World Trade or the Intercompany Receiver Claims from such preservation. *Id.* at § XIV(C) & (E).

20.     The Confirmation Order expressly provides that the Bankruptcy Court retains jurisdiction over all matters arising out of or related to the Chapter 11 Cases and the Plan, the matters set forth in Section XVI of the Plan. *See* Confirmation Order, ¶ 17. Section XVI provides that this Court shall retain exclusive jurisdiction to, *inter alia,* "make sure orders as are necessary and appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan." *See* Plan at § XVI(D)(i).

D.     **State Court Proceedings**

21.     On May 23, 2023, the Receiver filed a complaint (the "<u>Complaint</u>") against World Trade, Diego Alarcon, Bernd Hermann, Irene Kuo, Brian Rush, and other John Doe(s), whose legal

name is unknown (collectively the "Directors and Officers,"[4] and together with World Trade, the "Defendants") for (i) breach of contract, (ii) turnover of funds, (iii) unjust enrichment, and (iv) a preliminary injunction, which is currently pending in the State Court at Case No. 2023 CH 05056. A true and correct copy of the Complaint is attached hereto as **Exhibit C**,[5] and is incorporated by reference. The Complaint seeks to recover *from the Defendants* (all non-debtors and not Released Parties under the Plan) amounts owed under the Prepetition Agreement Documents, which include $14,052,614.84, for which the Debtor and the Defendants are joint and severally liable.

22. On July 14, 2023, the Defendants filed a motion to dismiss the Complaint (the "Motion to Dismiss"). A true and correct copy of the Motion to Dismiss is attached hereto as **Exhibit D**, and is incorporated by reference.

23. In the Motion to Dismiss, the Defendants argue, *inter alia*, that this Bankruptcy Court has jurisdiction over the Receiver's claims against the Defendants, and thus the State Court lacks jurisdiction to adjudicate the Complaint. The Defendants allege that the Debtor's 100% equity ownership of World Trade is an asset of the bankruptcy estate, and therefore bootstraps any claims against World Trade into claims against the Trust for administration by the Liquidating Trustee, irrespective of the fact that the claims asserted in the Complaint are claims by a non-debtor against a non-debtor.

24. In the Motion to Dismiss, the Defendants claim that pursuant to paragraph 17 of the Confirmation Order, this Court "retains jurisdiction of [ExWork's] bankruptcy case and all matters arising under, arising out of, or related to, this bankruptcy case and the Combined Disclosure Statement and [*sic*] (i) as provided for in Section XVI of the Combined Disclosure

---

[4] The Directors and Officers are not Released Parties under the Plan.

[5] The Complaint is attached hereto including all exhibits except for the Investment Agreement and Receivership Order to avoid duplication.

Statement and Plan, (ii)as provided for in this Confirmation Order, and (iii) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code." *See* Motion to Dismiss, p. 6. The Defendants argue that the Confirmation Order when read together with Section XVI(D) of the Plan which states that:

> The Bankruptcy Court shall retain exclusive jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; . . . (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of Executory Contracts or unexpired leases . . . .

*Id.* (citing Plan, § XVI(D)). The Defendants assert that the "Bankruptcy Court retained jurisdiction to adjudicate the Receiver's Claim, which is the exact claim the Receiver asks [the State Court] to adjudicate in its Complaint [] – albeit leaving out [the Debtor] as a Defendant (presumably in an attempt to sidestep its insurmountable jurisdictional hurdle)." *Id.*

25. On August 25, 2023, the Receiver filed a response to the Motion to Dismiss (the "Response"). A true and correct copy of the Response is attached hereto as **Exhibit E**, and is incorporated by reference. In the Response, the Receiver clarified that "[t]he Receiver filed the Complaint to seek a judgment and pursue the assets of *World Trade*, not the Debtor." Response, p. 6. The Receiver further explained that a "subsidiary of a debtor is not party of a bankruptcy" and therefore, the Bankruptcy Court is not the appropriate (or even, an available) forum for the Complaint, which seeks assets that are not part of the Debtor's estate. *Id.* at pp. 4-6. The Receiver also noted that Defendants' position, which is not tenable given the language of the Plan and Confirmation Order, "would grant Defendants immunity from any lawsuit involving the Investment Agreement." *Id.*

7

26. On September 8, 2023, the Defendants filed a reply in support of the Motion to Dismiss (the "Reply"). A true and correct copy of the Reply is attached hereto as **Exhibit F**, and is incorporated by reference. In the Reply, the Defendants continue their argument that the Bankruptcy Court has jurisdiction over the Complaint because "adjudicating a proof of claim is a 'core proceeding,' over which a bankruptcy court exercises jurisdiction" and because the Receiver's "claims in [the Complaint] are identical to those asserted in Bankruptcy Court *(albeit against different parties)*" the Receiver is "preclude[d] . . . from litigating the issue before [the State Court]." *See* Reply, p. 2 (emphasis supplied). The Defendants make these arguments despite the fact that the Receiver is, of course, not asking the State Court to adjudicate its proof of claim against the Debtor.

27. On September 28, 2023, the State Court held a hearing on the Motion to Dismiss. That same day, the State Court entered an order taking the Motion to Dismiss under advisement (the "State Court Order"). A true and correct copy of the State Court Order is attached hereto as **Exhibit G**, and is incorporated by reference.

28. Pursuant to the State Court Order, the State Court directed the Receiver to "file the appropriate motion seeking an order from the [Bankruptcy Court] stating that the filing of the [State Court Proceeding] is not a violation of the automatic stay; and further pursuant to 28 U.S.C. § 157(b)(2), (3), stating whether the Bankruptcy Court has jurisdiction over the [State Court Proceeding]." *See* State Court Order, ¶ 1.

29. On October 27, 2023, the State Court entered an Order Granting Agreed Motion for Extension of Time, which provides that the Receiver shall have until November 16, 2023 to file the Motion in this Court referenced in the State Court Order (the "Extension Order"). A true and correct copy of the Extension Order attached hereto as **Exhibit H**, and is incorporated by reference.

30. Since the entry of the State Court Order and the Extension Order, the Receiver contacted counsel for the Debtor to discuss a consensual order providing for the relief requested by the State Court. However, as of the filing of this Motion, the parties have not made any substantive progress toward such a consensual order and the Receiver is cognizant of the deadline set by the State Court to file this Motion.

31. The State Court Order also provides that on November 30, 2023, the State Court will hold a status conference on the Complaint and the Motion to Dismiss. The Receiver plans to inform the State Court at the status conference that this Motion has been filed.

## REQUESTED RELIEF

32. In the State Court Proceedings, World Trade confusingly asserts—contrary to the plain language of the Plan and the Bankruptcy Code—that the State Court does not have jurisdiction over the Receiver's Complaint. The Receiver anticipates that the State Court will have questions concerning the intent, scope, and correct interpretation of the provisions of the Confirmation Order and the Plan, and believes that it is critically important and in the interest of judicial economy for this Court to interpret its own order and issue any necessary clarifying orders.

33. Moreover, the Receiver respectfully submits that World Trade's position, if accepted by the State Court, would result in an unauthorized extension of the automatic stay, release, and injunction of the pursuit of claims and remedies against a non-debtor that was never intended by this Court and would run afoul of not only the Bankruptcy Code, but the express language of the Plan. Accordingly, the Receiver seeks an order from this Court clarifying and confirming:

a. Section XIV(E) of the Plan does not enjoin the Receiver from pursuing claims against World Trade, including those relating to the Prepetition Agreement Documents;

b. the Plan did not release the Receiver's rights or claims against World Trade, including those relating to the Prepetition Agreement Documents;

c. this Court lacks jurisdiction over the Receiver's claims against World Trade—a non-debtor—arising under the Prepetition Agreement Documents;

d. the Complaint and the relief requested therein does not violate the automatic stay; and

e. nothing in the Plan or Confirmation Order prevents the Receiver from pursuing its state law claims against World Trade in the State Court.

## ARGUMENT

**A.     The Bankruptcy Court Retains Jurisdiction to Interpret and Clarify Its Prior Orders and Is in the Best Position to Do So.**

34.    The Supreme Court has recognized that a "Bankruptcy Court plainly [has] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009).  In ruling that a bankruptcy court retained post-confirmation jurisdiction to interpret and enforce an injunction approved in its own confirmation order even decades after confirmation, the *Travelers* Court noted that the orders at issue "explicitly retained jurisdiction to enforce its injunctions."  *Id.*  The well-established principle that bankruptcy courts may enforce their own prior orders has been adopted by the Third Circuit.  *See In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 201–02 (3d Cir. 2022) (concluding, the Bankruptcy Court "'plainly had jurisdiction to interpret and enforce' the discharge and injunction provisions of its plan and confirmation order.") (citing *Somerset Reg'l Water Res.*, 949 F.3d 837, 845 (3d Cir. 2020); *JAB*

*Energy Sols. II, LLC*, Case No. 21-11226, 2023 WL 6131455, at *1 (Bankr. D. Del. Sept. 18, 2023) ("The controlling case law makes clear that this statutory grant of jurisdiction authorizes bankruptcy courts to interpret and enforce their own prior orders. The Supreme Court explained in *Travelers* that the question whether a bankruptcy court had jurisdiction to construe and enforce its prior orders was 'easy.' The Third Circuit recently underscored that principle in *Essar Steel*, stating unequivocally that 'bankruptcy courts have jurisdiction to interpret and enforce their prior orders.'").

35. Not only does a bankruptcy court retain subject matter jurisdiction but "the bankruptcy court [is] 'in the best position to interpret its own orders.'" *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 941 (4th Cir. 1997) (*quoting Texas N.W. Ry. Co. v. Atchison, Topeka and Santa Fe Ry. Co. (In re Chicago, Rock Island & Pac. R.R. Co.)*, 860 F.2d 267, 272 (7th Cir. 1988)); *In re Shenango Grp. Inc.*, 501 F.3d 338, 345–46 (3d Cir. 2007); *Deep v. Copyright Creditors*, 122 F. App'x 530, 532 (2d Cir. 2004) ("The bankruptcy court, which was in the best position to interpret its own order . . . ."); *In re Armstrong Energy Inc.*, 613 B.R. 529, 531 (B.A.P. 8th Cir. 2020) (same) (citations omitted). A bankruptcy court's direct engagement in earlier proceedings gives it a "better vantage point from which to assess the order's meaning." *In re Tomlin*, 105 F.3d at 941 (internal quotations omitted).

36. The proper interpretation of this Court's Confirmation Order approving the Plan will be integral to the State Court's determination of the jurisdictional issues raised in the Motion to Dismiss and the State Court Proceedings. This Court retains the inherent jurisdiction to interpret its own prior orders, and the express provisions of paragraph 17 of the Confirmation Order and Section XIV(E) of the Plan support this Court's continued jurisdiction over these issues.

37. As noted in *Tomlin*, the Bankruptcy Court's existing knowledge of the bankruptcy proceedings, the parties, and the Bankruptcy Court's experience with respect to the disputed issues, offer the Bankruptcy Court a "better vantage point" to correctly interpret its orders. Interests of judicial economy also favor the Bankruptcy Court interpreting its prior orders, as the court most familiar with the applicable law in a strictly legal, and not factual, dispute. The Receiver is not requesting that the Bankruptcy Court adjudicate the entirety of the underlying legal dispute between the Receiver and World Trade, or the existence or amount of any liability owed by World Trade under the Prepetition Agreement Documents. The Receiver solely seeks to have this Court determine that the terms of the Plan and Confirmation Order do not prohibit the Receiver's pursuit of state law claims against World Trade in State Court as a matter of law.

**B.    The Plan and Confirmation Order Do Not Preclude The Receiver from Pursuing Claims Against World Trade.**

38. The Defendants' arguments in the Motion to Dismiss are contrary to the plain language of the Confirmation Order and Plan, specifically Section XIV(E) of the Plan, which expressly preserves the right of Receiver to commence or continue any claims, causes of action, proceedings, or investigations against any person or entity in any forum, except for claims brought against the Estate, Liquidating Trust, or Liquidating Trust Assets. Plan, § XIV(E). "Estate," "Liquidating Trust," and "Liquidating Trust Assets" are each defined terms under the Plan and *none* of those definitions include World Trade, as an entity, or World Trade's assets.[6]

39. The Defendants' argument, if accepted, would effectively provide for them to receive a "discharge" under the Plan, which contravenes the bounds established by Section 1141(d) and

---

[6] Property of the estate includes only the equity of World Trade, but not the non-debtor affiliate entity itself. *Equity Broad. Corp. v. Shubert (In re Winstar Commc'ns. Inc.)*, 284 B.R. 40, 51 (Bankr. D. Del. 2002) (holding that a lawsuit against a non-debtor subsidiary does not violate the automatic stay, even if such lawsuit may impact the value of the stock that the parent-debtor owns, as it does not "alter the Bankruptcy estate's right, liabilities, options or freedom of action" and that "ownership of all of the outstanding stock of [the subsidiary] by the [parent-debtor] does not confer jurisdiction on the Bankruptcy Court to decide disputes involving [the subsidiary's] assets." ); *see also, Kreisler v.*

524(e) of the Bankruptcy Code. Section 1141(d) of the Bankruptcy Code provides in pertinent part that, "[e]xcept as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan . . . discharges <u>the debtor</u> from any debt that arose before the date of such confirmation and any debt of a kind specified in section 502(g) . . . ." 11 U.S.C. § 1141(d) (emphasis added). In addition, Section 524(e) of the Bankruptcy Code expressly provides that "the discharge of <u>a debt of the debtor</u> does not affect the liability of any other entity on, or the property of any other entity for, such debt. 11 U.S.C. § 524(e) (emphasis added). Indeed, "the discharge in bankruptcy, along with the coextensive permanent injunction and fresh start, are exclusive <u>to the debtor,</u> and <u>do not otherwise affect the enforcement of any underlying debt, or any nondebtor liability thereon</u>" *In re Jason Pharm., Inc.*, 224 B.R. 315, 321 (Bankr. D. Md. 1998) (emphasis in original)); *In re Weiand Auto. Indus.*, 612 B.R. 824, 859 (Bankr. D. Del. 2020) ("Both statutory law and case law provide that the Plan discharge does not affect the liability of non-debtor third parties. Section 524(e) of the Bankruptcy Code explicitly provides that the discharge does not apply to non-debtors who may be liable for the debtor's debts. Collectively, § 524(a) and § 524(e) allow a creditor to recover from a third-party who may be liable for the debt of the debtor."). Accordingly, if the Defendant's argument were adopted here would be the equivalent of permitting the Defendants, non-debtors, to enjoy a benefit reserved solely to a debtor,[7] without ever filing for bankruptcy itself or subjecting its assets to administration as part of the bankruptcy estate.

40. The Defendants—all non-debtors—are not protected by the automatic stay in this bankruptcy case. As the Third Circuit has explained, "the automatic stay provision does not apply

---

*Goldberg*, 478 F.3d 209, 211 n.1, 215 (4th Cir. 2007) (holding that where a debtor-parent owns all of the shares of a non-debtor, the property of the non-debtor subsidiary is not property of the estate).

[7] In this case, not even the actual Debtor received a discharge under the Plan, making this argument even more absurd. *See* Plan § XV.

generally to non-debtor parties." *Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir. 2009) (citing *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124 (4th Cir. 1983) (a stay under section 362(a)(1) applies only to the debtor and not to the debtor's solvent co-defendants); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 4 (1st Cir. 1983) (same); *Pitts v. Unarco Indus.*, 698 F.2d 313, 314 (7th Cir. 1983) ("The clear language of Section 362(a)(1) . . . extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to nonbankrupt co-defendants. This interpretation has been adopted by several reviewing courts.")); *see also*, *In re Forever 21, Inc.*, 623 B.R. 53, 63 (Bankr. D. Del. 2020) (explaining that absent "unusual circumstances," "[t]he automatic stay only protects debtors, not non-debtor parties."). Here, the filing of the Complaint *against non-debtors* is not barred by the *Debtor's* automatic stay.

41. In the Motion to Dismiss and the Reply, the Defendants seek to conflate the Complaint brought by the Receiver against the non-debtor Defendants with the separate Proof of Claim that was filed against the Debtor by suggesting they are somehow "the same." Motion to Dismiss, p. 6; Reply, p. 2. Using that logic, Defendants argue that since the Complaint and Proof of Claim assert the same claims, the Bankruptcy Court retains exclusive jurisdiction to decide those "claims" and the State Court is somehow divested of jurisdiction.

42. The Defendants cannot create a procedural loophole in this way to confer exclusive, post-confirmation jurisdiction on the Bankruptcy Court over the Complaint. Despite the Defendants' protestations, the Complaint asserts state law claims by a non-debtor and against a non-debtor and the Bankruptcy Court lacks jurisdiction to hear those claims. *Stern v. Marshall*, 564 U.S. 462, 495 (2011) (finding "Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.") (quoting *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec.*

*Co.*, 549 U.S. 443, 451 (2007); *Butner v. United States*, 440 U.S. 48, 55 (1979)). It is of no consequence to the jurisdictional issue that the claims asserted in the Proof of Claim and the claims asserted in the Complaint arise from the same contracts; the Bankruptcy Court nevertheless lacks jurisdiction over state law claims against a non-debtor.

43. The Defendants cite the provision of the Plan that permits the retention of this Court's jurisdiction "to resolve all issues regarding Claims objections, and issues arising from assumption/rejection of Executory Contracts or unexpired leases" as providing this Court with the jurisdiction over state law causes of action brought against non-debtors. A retention of jurisdiction provision cannot create jurisdiction where none exists. These efforts to distort the Plan and use the Plan as a tool to avoid the State Court Proceedings and escape liability must fail.

44. Moreover, the resolution of these state law claims against the Defendants will benefit the Debtor. The Defendants and the Debtor are jointly and severally liable for certain of the claims raised in the Complaint and therefore, any recovery by the Receiver in the State Court Proceeding will result in a dollar-for-dollar reduction of the amount owed to the Receiver by the Debtor on account of the Proof of Claim.

45. The Defendants did not file bankruptcy. The Defendants are not the Debtor, were not released under the Plan, and were not the beneficiaries of the Plan injunction. The Plan even went so far as to state that nothing therein "enjoins, limits, impairs, or delays the Receiver from commencing or continuing any claims, causes of action, proceedings, or investigations against any person or entity in any forum." Plan at § XIV(E). This language is clear and unequivocal, and should be enforced.

## NO PRIOR REQUEST

46. No prior request for the relief sought in this Motion has been made to this or any other Court.

**NOTICE**

47.　　Notice of this Motion is being provided to: (i) counsel for the Debtor, (ii) the Office of the United States Trustee, (iii) counsel for the Defendants, and (iv) electronically via CM/ECF on all parties that have filed a request for service of notices in this case. In light of the relief requested, the Receiver submits that no other or further notice is required.

**CONCLUSION**

WHEREFORE, Receiver respectfully requests that the Court enter an order clarifying that the terms of the Plan and Confirmation Order do not preclude the Receiver from asserting any of its rights and claims against the Defendants in State Court.

Dated:  November 16, 2023

/s/ Laurel D. Roglen
Matthew G. Summers (DE #5533)
Laurel D. Roglen (DE #5759)
BALLARD SPAHR LLP
919 North Market Street, 11th Floor
Wilmington, Delaware 19801
Telephone:  (302) 252-4428
Facsimile:  (302) 252-4466
E-mail:  summersm@ballardspahr.com
　　　　　roglenl@ballardspahr.com

and

Bryan E. Minier, Esquire
LATHROP GPM LLP
155 North Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 920-3300
Facsimile: (312) 920-3301
E-mail:bryan.minier@lathropgpm.com

*Counsel for Stephen L. Kunkel, solely in his capacity as court appointed receiver for ExWorks Capital Fund I, L.P.*